[No. 46714–5.   En Banc.   July 2, 1981.]

SALLIE VAN DYKE, *Respondent,* v. GERALD THOMPSON, *as Secretary of the Department of Social and Health Services,* ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Michael T. Mitchell, Assistant,* for appellants.

*Peter Greenfield* of *Evergreen Legal Services,* for respondent.

*Andrew M. Walkover* and *Fredric C. Tausend* on behalf of University of Puget Sound School of Law, amici curiae for respondent.

DOLLIVER, J.—Plaintiff Sallie Van Dyke is married to Sidney Van Dyke. Two children resulting from this marriage are living with them. Sidney Van Dyke has a child from a previous marriage who has never lived with plaintiff and her husband. Sidney Van Dyke, who is unemployed and has no assets, is obligated to pay monthly child support for the child of his previous marriage, pursuant to a decree of divorce entered on April 1, 1969. His payment of that obligation is in arrears.

In November of 1978, Sidney Van Dyke was served with a notice of debt and demand for payment from the Department of Social and Health Services (DSHS). This notice offered Sidney Van Dyke an opportunity for a hearing to determine the amount of his arrearage if he paid the amount DSHS had determined was then due. No notice or opportunity for a hearing was afforded plaintiff, Sallie Van Dyke. Sidney Van Dyke requested a hearing, but was not given one because he did not make payments as directed in the notice.

In May 1979, defendant served an order on plaintiff's employer to withhold and deliver to DSHS 25 percent of her wages to satisfy the obligation to support the child of her husband's prior marriage.

Plaintiff brought this action for injunctive and declaratory relief. The trial court granted summary judgment to plaintiff. It held DSHS had no authority to collect the wages of a noncustodial stepparent to satisfy the noncusto-

dial parent's obligation to support the child of a previous marriage. The court further enjoined defendants from taking plaintiff's wages to satisfy the claim for the support of Sidney's child by the previous marriage. Defendants appealed directly to this court.

Three questions are presented: (1) The applicability of RCW 26.16.205 to a noncustodial stepparent; (2) whether the holding of *Fisch v. Marler,* 1 Wn.2d 698, 97 P.2d 147 (1939), that the earnings of the obligated parent in a new community could be reached for child support, should be extended so that the interest of the obligated parent in the community earnings of the noncustodial stepparent could be reached for child support; and (3) if either (1) or (2) are answered in the affirmative, what are the due process requirements necessary to protect the new community of an obligated parent and a noncustodial stepparent. Because of our response to issues (1) and (2), we need not and do not reach issue (3).

## I

The family support statute is RCW 26.16.205. In 1969, the legislature amended the statute to include stepchildren:

> The expenses of the family and the education of the children, *including stepchildren,* are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately: *Provided, That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife.*

(Italics ours.) RCW 26.16.205. Portions italicized were enacted in 1969. Laws of 1969, 1st Ex. Sess., ch. 207, § 1, p. 1549.

Defendants contend RCW 26.16.205 conflicts with previous common law principles in this state (*Taylor v. Taylor,* 58 Wn.2d 510, 364 P.2d 444 (1961), only stepparents in loco parentis were required to contribute to the needs of a child), and that its effect is to create obligations between stepparents and stepchildren equal to those between natural children and their parents. Thus, RCW 26.16.205 would

apply to the community and separate property of both the encumbered parent and the noncustodial stepparent. On the only other occasion when the court considered RCW 26.16.205, the question of "whether the statutes apply to stepchildren not residing with stepparents" was specifically reserved. *Washington Statewide Organization of Stepparents v. Smith*, 85 Wn.2d 564, 565 n.2, 536 P.2d 1202 (1975). It is the view of defendants that if the legislature had intended to restrict RCW 26.16.205 to custodial stepparents, it would have placed this qualification in the statute.

Plaintiff, however, asserts that if the legislature had intended this radical change in the common law its intent would have been clearly manifested. She points out there are two interpretations which can be given to the 1969 amendment: (1) A stepchild would be considered part of the family of a stepparent only if the stepparent were married to the child's custodial parent. This is simply a codification of the common law. *Taylor v. Taylor, supra.* It is the position of plaintiff. (2) The spouses of noncustodial obligated parents would be separately liable for the support of their spouse's children of earlier marriages. This is the position of defendants.

We cannot believe the legislature intended the result proposed by defendants. Nothing in the legislative history indicates such an intention. *See* Senate Journal, 41st Legislature (1969), at 1413–14. Indeed, legislation passed during the same 1969 legislative session gives credence to a contrary view. RCW 26.16.200, the so-called "marital bankruptcy" statute, was also amended in 1969. The statute as amended provides that some antenuptial obligations may be enforced against a debtor who has subsequently married. It is limited in two critical ways: First, the antenuptial creditor must reduce the claim to a judgment within 3 years of the marriage. Second, the judgment is enforceable only against the earnings and accumulations of the debtor spouse. The 1969 amendment provided that "For the purpose of [RCW 26.16.200] neither the husband nor the wife shall be construed to have any interest in the

earnings of the other". This specific immunizing of the earnings and accumulations of a nonobligated spouse from the creditors of the obligated spouse in RCW 26.16.200 is persuasive evidence that the same legislature did not intend to eliminate this immunity when it amended RCW 26.16.205.

If the legislature had intended the departure from the common law urged by defendants, it could have chosen clear, unambiguous language. *Green Mountain School Dist. 103 v. Durkee,* 56 Wn.2d 154, 351 P.2d 525 (1960). It did not do so. We reject the position of defendants and hold RCW 26.16.205 does not apply to either the separate or community property of a noncustodial stepparent.

## II

It has been a basic principle of our community property law that community assets are not liable for the separate debts of a spouse. *Achilles v. Hoopes,* 40 Wn.2d 664, 245 P.2d 1005 (1952). An equally strong principle has been that the antenuptial responsibility for child support be met by an obligated parent. The conflict between these two principles was considered at length in *Fisch v. Marler, supra.* After an extended analysis, the court announced the following rules:

(1) The subsequent marriage of a divorced husband does not relieve him of his obligation to pay to his former wife permanent alimony as required by the decree of divorce, and the former wife has, and continues to have, a fixed and prior claim upon his earnings for the payment of such alimony. This rule finds particular support on grounds of justice and reason where there is a minor child or children of the former marriage.

(2) Garnishment is a proper proceeding to enforce such claims.

(3) The subsequent marriage of the divorced wife does not, of itself, terminate her fixed and prior claim upon the earnings of her former husband, whether he remarries or not, nor does her subsequent marriage *ipso facto* terminate her right to enforce her claim by garnishment. This rule is likewise particularly applicable in cases

where there is a minor child or children of the former marriage.

(4) Although the claim of the divorced wife upon the earnings of her former husband is a fixed and prior one, it is not in all cases to be enforced to the point of exhaustion of such earnings, for the present wife also has a claim thereon which is entitled to consideration. Upon a showing by the present wife of necessitous circumstances, particularly where there is a minor child or children of the husband's subsequent marriage, the court may make such adjustment and allocation of the husband's earnings as may appear to it to be just and equitable in the premises.

(5) For the purpose of securing or protecting such rights as she may have in the earnings of her husband, the present wife may intervene in any proceeding which affects such earnings.

*Fisch*, at 715–16. It should be noted that the term "alimony" as used in *Fisch v. Marler, supra,* includes child support.

It is the contention of defendants that *Fisch v. Marler* was concerned with the obligation of the *community* to the antenuptial responsibility for child support. They subscribe to the view expressed in dicta in *Hinson v. Hinson,* 1 Wn. App. 348, 353, 461 P.2d 560 (1969):

The reasoning in *Fisch v. Marler, supra,* is equally applicable to the duty of child support imposed on both father and mother by statute. RCW 26.16.205; *Hector v. Hector,* [51 Wash. 434, 99 P. 13 (1909)]. Therefore, a man who marries a woman with children in the custody of the father, or a woman who marries a man with children in the custody of the mother, enters the new marriage relation subject to prior claim of child support against the community property of the new marriage. As a consequence, the earnings of the new community can be required to respond in contribution for reasonable child support, whether or not the children are resident with the new community.

Defendant's argument that public policy dictates the opposite conclusion as to a remarried mother is without merit in this day of women's emancipation and their participation at almost every level of responsibility in

business, government and community affairs. Indeed, it would be contrary to public policy to permit either a father or a mother to evade his or her responsibility to support their offspring by the device of remarriage.

*See also* H. Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 831 (1974).

■ We believe this is too expansive a reading of *Fisch v. Marler.* It is apparent the court chose its language very carefully in that case. At no time does it speak of the property of the new community. Rather, it consistently refers to the *earnings* of the obligated spouse. Thus, it is only that which is *earned* by the obligated spouse which is subject to this antenuptial responsibility. That these earnings are also community property is irrelevant to the holding of *Fisch.* Child support incurred as an antenuptial obligation may be pursued against the *earnings* of the obligated spouse in the new community. *See* RCW 26.16.200. There is no suggestion in *Fisch v. Marler* that the *community* earnings per se are subject to such debt; only the earnings of the obligated spouse. Thus, *Fisch v. Marler* is not authority for the proposition supported by defendants and announced in *Hinson* that any community earnings are liable for antenuptial noncustodial child support.

While there are ample public policy reasons for the exemption created by *Fisch v. Marler,* and while we are not unmindful of the need to support children of a prior marriage, we are not persuaded the exemption should be extended to reach that community property consisting of the earnings of the noncustodial, nonobligated stepparent. The 1969 amendment to RCW 26.16.200 reinforces this view. Furthermore, the rule urged by defendants would be contrary to other compelling public policies: It would discourage marriage; it would encourage married persons to live separate and apart and thereby characterize their earnings as separate property; it would place unwarranted stress upon a second marriage which is already faced with the tensions and demands both emotional and financial of dealing with children of the first marriage.

Given this clash of public policies, the limited scope of *Fisch v. Marler,* the 1969 amendment to RCW 26.16.200, and the fact that the legislature has not spoken clearly and unambiguously on the matter, we hold that the earnings of a noncustodial, nonobligated stepparent are not subject to the antenuptial obligation of child support.

Affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, HICKS, DORE, and DIMMICK, JJ., concur.

ROSELLINI, J. (concurring in part)—I have signed Justice Dolliver's majority opinion. Since it was not necessary in the opinion to address the question of the due process requirement, I agree with Justice Utter's holding that the plaintiff's constitutional right of due process was violated.

I would further hold that the requirement of payment of the amount accrued under the support payments ordered by the Superior Court before a hearing would be granted and that the hearing would be limited to the amount due, is unconstitutional.

UTTER, J. (concurring in part, dissenting in part)—The majority concludes that RCW 26.16.205 does not apply to either the separate or community property of a noncustodial stepparent. I agree for the reasons its states. The majority next concludes that an obligation to support children of a prior marriage may not be enforced against the community earnings of a remarried, noncustodial stepparent. I cannot agree and believe the majority holding is contrary to fundamental community property law. The majority reaches a conclusion contrary to the views stated in H. Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729 (1974).

The majority states that the Court of Appeals in *Hinson v. Hinson,* 1 Wn. App. 348, 461 P.2d 560 (1969), gave too expansive a reading to *Fisch v. Marler,* 1 Wn.2d 698, 97 P.2d 147 (1939). There the Court of Appeals held, on the

reasoning of *Fisch v. Marler, supra,* that a man who marries a woman with children in the custody of the father or a woman who marries a man with children in the custody of the mother, enters the new marriage relation subject to the prior claim of child support. The court concluded: "As a consequence, the earnings of the new community can be required to respond in contribution for reasonable child support, whether or not the children are resident with the new community." *Hinson,* at 353.

The court further stated, at page 353:

Defendant's argument that public policy dictates the opposite conclusion as to a remarried mother is without merit in this day of women's emancipation and their participation at almost every level of responsibility in business, government and community affairs. Indeed, it would be contrary to public policy to permit either a father or a mother to evade his or her responsibility to support their offspring by the device of remarriage.

That conclusion was critically reviewed by Professor Harry M. Cross, *The Community Property Law in Washington, supra,* and accepted as correct. Professor Cross stated, at page 831:

Although somewhat startling, this result is probably sound. The fundamental idea of community property law is that the acquisitions during marriage result from the spouses working in their respective spheres. Hence, the husband's wages, though received from external sources, are in part "earned" by the wife maintaining the home. *Ergo,* there should be no necessary limitation on the enforceability of this antenuptial obligation only to wages or other income acquired by the "encumbered" spouse!"

The Court of Appeals reasoning in *Hinson* makes great common sense as well as good law. The bugaboos envisioned by the majority are insufficient to overcome the reasoning of *Hinson* and the need for consistency in community property theory. I would hold that in absence of necessitous circumstances, an obligation to support the children of a prior marriage may be enforced against the community earnings of the new community, including the

earnings of the noncustodial stepparent. A new community should not be able to avoid a prior support obligation by deciding that only the nonobligated spouse shall work.

I still cannot hold for the Department, however, as I believe the method used by DSHS to obtain the stepparent's earnings did not comport with procedural due process. The garnishment of the stepparent's wages was a prejudgment seizure against the community, and since no opportunity for a meaningful prior hearing was provided, the procedure violated the due process guaranties of both the federal and state constitutions. Prejudgment seizure of property without prior notice and hearing violates due process unless extraordinary circumstances are present. *Fuentes v. Shevin,* 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972); *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 511 P.2d 1002 (1973).

Reliance on *Komm v. Department of Social & Health Servs.,* 23 Wn. App. 593, 597 P.2d 1372 (1979), which appellants claim is factually identical, is misplaced. In *Komm,* DSHS provided foster care for the wife's children of a former marriage after she remarried, and sought to collect contribution for their support. DSHS served the wife, but not the husband, with notice of the administrative proceedings. At those proceedings the wife was found liable, and the Superior Court affirmed. Without further notice, DSHS then served the husband's employer with an order to withhold and deliver, under RCW 74.20A.080, as in this case. Rejecting the husband's argument that the garnishment of his wages was an unconstitutional prejudgment seizure, the Court of Appeals held that the seizure was postjudgment, following service upon the community's statutory agent, the wife. Service on both spouses was unnecessary because a judgment entered against one spouse is presumed good against the marital community. *See Merritt v. Newkirk,* 155 Wash. 517, 285 P. 442 (1930). *Northern Commercial Co. v. E.J. Hermann Co.,* 22 Wn. App. 963, 593 P.2d 1332 (1979). The community, through the wife, was legally present at the administrative hearing and could

assert any and all defenses to DSHS' claim.

The Komms' community liability stemmed from the administrative determination, made during their marriage, of liability for support. Here, the determination of liability for support was made in 1969, when Sidney Van Dyke was divorced. Obviously, the new community of Sidney and Sallie Van Dyke did not even exist at that time. Thus, the child support determination cannot be presumed good against the new community.[1] *See Merritt v. Newkirk, supra.* Unlike *Komm,* the community in this case was not present when the support obligation was imposed and has not had an opportunity to assert its defenses. Therefore, the reasoning used by the Court of Appeals in *Komm* is inapplicable to the present case. The new party, the new community, may not be held responsible for an obligation existing before its creation and must have its day in court. The seizure of community assets was prejudgment and therefore both prior notice and a hearing were required to allow the community to raise defenses, including necessitous circumstances, and to determine the extent of community liability. Since DSHS failed to give the community a meaningful opportunity to raise its defenses, the procedure violated due process.

Both the United States Constitution, in the Fourteenth Amendment, and the Washington State Constitution, in article 1, section 3, guarantee that the State shall not deprive any person of property without due process of law. Ultimately, due process expresses "respect enforced by law

---

[1] A decree providing for child support requires a series of payments over time. For purposes of the statute of limitations, an installment of child support becomes an individual judgment when due and unpaid, and thus cannot be enforced more than 6 years after accrual. *Roberts v. Roberts,* 69 Wn.2d 863, 420 P.2d 864 (1966); *Mosher v. Mosher,* 25 Wn.2d 778, 172 P.2d 259 (1946). RCW 6.04.010. The record in this case does not indicate the date of Sidney's and Sallie's marriage, but presumably they were married when at least part of the support sought here became due. Thus, for purposes of the statute of limitations, individual judgments were accruing while the new community was in existence. However, the time those individual obligations became due is unrelated to the underlying substantive obligation, which was imposed before creation of the new community.

for that feeling of just treatment" and fairness "between the individual and government". *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162, 95 L. Ed. 817, 71 S. Ct. 624 (1951) (Frankfurter, J., concurring). DSHS' seizure of Sallie Van Dyke's wages in this case did not comply with that standard of fundamental fairness.[2]

Sidney Van Dyke was divorced from his former wife under a 1969 divorce decree which obligated him to pay $65 per month child support. He then married his present wife, Sallie. Sidney's payment of the support is in arrears, and public assistance has been paid for the benefit of the child. In 1978, the Office of Support Enforcement, pursuant to RCW 74.20A.040, served on Sidney a "Notice of Support Debt and Demand for Payment". The notice told Sidney that he could obtain a hearing by paying the amount for current and future support due under the Superior Court order, that the subject matter of the hearing was limited to the amount due, and that 20 days from service "your property, without further advance notice or hearing, is subject to collection action, in the form of [an] . . . order to withhold and deliver . . ." Sidney requested a hearing, but did not receive one because he failed to pay the amount required.[3] DSHS, without further notice, then served an order on Sallie's employer to withhold and deliver 25 percent of her wages, under RCW 74.20A.080. This procedure does not satisfy the bare minimal requirements of due process.

What due process requires cannot be reduced to a formula, but depends on the nature of the particular situation.

---

[2] This case concerns only the procedure used by DSHS to enforce its right of subrogation to a child support debt. Collection of a child support debt by the custodial parent is not at issue here.

[3] RCW 74.20A does not provide for a hearing when DSHS is seeking reimbursement based on a support obligation established by a superior court order. *Cf.* RCW 74.20A.055 (hearing opportunity when DSHS makes finding of financial responsibility, in absence of superior court order). DSHS' allowance of a hearing in this case, and the limitations on it, apparently stemmed from WAC 388–14–375 (repealed WSR 79–11–086, 1979).

*Bell v. Burson,* 402 U.S. 535, 540, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971). Certain minimal requisites, however, are fixed. *Olympic Forest Prods.,* at 423.

> For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Baldwin* v. *Hale,* [68 U.S.] 1 Wall. 223, 233. It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U. S. 545, 552.

(Citations omitted.) *Fuentes v. Shevin, supra* at 80.

The hearing allowed by DSHS in this case was meaningless. First, DSHS conditioned the opportunity for a hearing on payment. Such a requirement imposes an unconstitutional condition on the exercise of a due process right.

"There are rights of constitutional stature whose exercise a State may not condition by the exaction of a price." *Garrity v. New Jersey,* 385 U.S. 493, 500, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967); *see also Harman v. Forssenius,* 380 U.S. 528, 540–41, 14 L. Ed. 2d 50, 85 S. Ct. 1177 (1965). In *North Ga. Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719 (1975), the United States Supreme Court invalidated a Louisiana prejudgment garnishment statute. One of the faults found with the statute was that the only method the debtor had to dissolve the garnishment was to post a bond. *North Georgia,* at 607. The condition imposed in this case is even more onerous because it is a prerequisite to the exercise of the right to the hearing itself. *Cf. Boddie v. Connecticut,* 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780 (1971) (state may not deny right to dissolution of marriage based on inability to pay court costs).

Second, DSHS limited the subject matter of the hearing to the amount of accrued support arrearages. Thus, even if the community could afford a hearing, it could not raise any defenses as to its substantive liability, including necessitous circumstances. Due process is afforded only by a

hearing which is aimed at establishing the validity of the underlying claim. *Sniadach v. Family Fin. Corp.,* 395 U.S. 337, 343, 23 L. Ed. 2d 349, 89 S. Ct. 1820 (1969) (Harlan, J., concurring).

Although I believe the new community may, given a proper hearing and factual finding, be held liable in part for the support obligation of the "encumbered" spouse, I also believe, under the facts of this case, that the seizure of Sallie Van Dyke's wages violated due process and would therefore affirm the trial court for the reasons I have stated.

WILLIAMS, J., concurs with UTTER, J.