**Marie D. SORENSON, Plaintiff,**

v.

**The SECRETARY OF the TREASURY OF the UNITED STATES, and The United States of America, Defendants.**

**Civ. A. No. C82–441C.**

United States District Court,
W.D. Washington.

Dec. 28, 1982.

Peter Greenfield, Evergreen Legal Services, Seattle, Wash., J. Bruce Smith, Evergreen Legal Services, Bellingham, Wash., for plaintiff.

Gene S. Anderson, U.S. Atty., Charles C. Pinnell, Asst. U.S. Atty., Seattle, Wash., Scott A. Milburn, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER ON PENDING MOTIONS·

COUGHENOUR, District Judge.

Plaintiff challenges portions of the Omnibus Budget Reconciliation Act of 1981 which provides a new mechanism for the collection of delinquent child support payments. Under the Act, tax refunds owed to parents having delinquent child support obligations are instead transferred to the states to reimburse the states for expenditures they made to support the affected children under the Aid to Families with Dependent Children ("AFDC") program. Plaintiff challenges these provisions to the extent they authorize the transfer of tax refunds created by her earnings.

## FACTS

Plaintiff is a married woman who lives in the State of Washington. Her husband is indebted to the State of Washington for his failure to make required child support payments to the children of his prior marriage. In February of 1982, plaintiff and her husband filed a joint 1981 Federal income tax return. All the income reported was from plaintiff's wages and unemployment benefits. Plaintiff and her husband were to receive a tax refund of $1,408, consisting of excess withheld wages and an earned income credit.

Plaintiff did not, however, receive her expected refund. The Internal Revenue Service ("I.R.S.") withheld payment of the refund so that the refund could be offset against the amount owed Washington State because of her husband's nonpayment of child support. After unsuccessfully trying to obtain her refund from the local office of the I.R.S. and the Washington State Department of Social and Health Services, Office of Support Enforcement ("DSHS"), plaintiff instituted the present action on April 19, 1982. On April 22, the I.R.S. confirmed the information plaintiff received from the local office that all or part of her refund was being withheld to satisfy a past-due support obligation. On June 28, the I.R.S. sent plaintiff "legal notice" that her claim for refund was partially disallowed. Presumably pursuant to Washington community property law, all of the overpayment of tax resulting from the income of plaintiff's husband and one-half of the overpayment resulting from plaintiff's income was to be retained and transferred to the State of Washington for the payment of plaintiff's husband's support obligation. Defendants later clarified their position, and only claimed one-half of the total community property overpayment.

## ISSUES PRESENTED

Plaintiff objects to the retention of half of the tax refund resulting from her earnings and unemployment compensation. She has filed a motion for class certification and for summary judgment. Defendants have filed a motion to dismiss and a motion for summary judgment. The central issues raised by these motions are: (1) whether plaintiff's suit should be characterized as one involving the collection or assessment of taxes and therefore subject to the legal impediments to suit applicable to tax actions; (2) whether plaintiff's husband has a property interest in his wife's earnings for the purposes of collection of his separate debt of child support; and (3) whether the procedures employed satisfy due process. These inquiries require an examination of the statutory scheme and the relationship between State property law and the collection of Federal taxes.

## THE STATUTORY SCHEME

The collection of past-due support payments is a matter of private, State and Federal concern. While Congress believed that the basic responsibility for the collection of child support rested with the States, Congress did envision a more active Federal role. See S.Rep. No. 93–156, 93rd Cong., 2nd Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 8133, 8150 (hereinafter referred to as "Senate Report"). Two schemes have been enacted for the Federal collection of child support.

Under the first and older system, the States are authorized to use the Federal income tax collection mechanism itself for collecting support payments. Senate Report at 8153. Upon request of a State with an approved State plan, the Secretary of the Department of Health, Education and Welfare is authorized to certify the amount of any child support obligation assigned to that State to the Secretary of the Treasury. 42 U.S.C. § 652(b). Parents, as a condition of eligibility for welfare, are required to assign their rights to support payments to the State and to cooperate with the State in the securing of support payments from the obligated parent. Senate Report at 8152. The support obligation becomes a debt owed by the obligated parent to the State. *Id.* at 8153. Upon receiving certification from the Secretary of Health, Education and Welfare of the amount owed to the State by the obligated parent, the Secretary of the Treasury is required to assess and collect that amount "in the same manner, with the same powers, and (except as provided in this section) subject to the same limitations as if such amount were a tax . . . ." 26 U.S.C. § 6305(a). This collection mechanism was intended to be available only in cases in which the State could establish to the satisfaction of H.E.W. that it had made diligent efforts to collect the payments through other processes but without success. Senate Report at 8153. This method is hereafter referred to as the "assessment" collection method.

The second Federal method of collection is the one presently under challenge. Upon receiving notice from a State child support agency that an individual owes past-due support which has been assigned to the State as a condition of AFDC eligibility, the Secretary of the Treasury is required to determine whether any amounts as refunds of Federal taxes paid are payable to that individual. If any refunds are owed, he is authorized to withhold from such refunds an amount equal to the past-due support. That money is to· be paid directly to the State agency, together with notice of the taxpayer's current address. *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, 95 Stat. 357, S.Rep. No. 97–139, 97th Cong., 1st Sess., reprinted in 1981 U.S.Code Cong. & Ad.News 396, 1347 (hereinafter referred to as "Committee Report"). *See also* 42 U.S.C. § 664 and 26 U.S.C. § 6402. Thus, unlike the prior system, these provisions authorize the interception and transfer of funds already in the possession of the Government. · This method is hereafter referred to as the "transfer" collection method.

## THE CHARACTERIZATION QUESTION

The characterization of the plaintiff's claim is hotly contested by the parties. Defendants contend that this is a tax refund suit while plaintiff claims this is merely a collection case. The determination of the nature of the plaintiff's claim has a direct impact on the issues of subject matter jurisdiction, sovereign immunity, injunctive and declaratory relief and the propriety of the maintenance of a class action.

Tax cases in the Federal courts are subject to strict procedural requirements. Suit cannot be begun for the recovery of any tax until six months have expired from the filing of the claim for refund, unless the Secretary of the Treasury disallows the claim within that time. 26 U.S.C. § 6532. *See Davis v. Commissioner,* 78–1 U.S.T.C. ¶ 9355 (D.S.C.1978). The six-month requirement may even be applicable if the Secretary subsequently denies the claim after plaintiff had begun suit. *See Anderson v. I.R.S. District Director,* 79–2 U.S.T.C.

¶ 9519 (E.D.Wis.1979). Another result in tax cases is that the United States and its officers have not consented to be sued for tax refund actions unless the procedural requirements have been satisfied. *See* 5 U.S.C. § 702 (sovereign immunity is not waived if another statute expressly forbids the relief sought). Moreover, except in extremely limited situations, injunctive and declaratory relief are unavailable in the tax context. 26 U.S.C. § 7421(a) prohibits the bringing of suit for the purpose of restraining the assessment or collection of any tax. The Anti-Injunction Act has been given wide reading by the courts. *See Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Zimmer v. Connett,* 640 F.2d 208 (9th Cir.1981). The Declaratory Judgment Act contains a similar exception for suits with respect to Federal taxes. 28 U.S.C. § 2201. Finally, the above jurisdictional and procedural limitations, as well as the general nature of tax cases, would make class certification very problematic.

A support obligation is significantly different from a tax obligation. *See* Senate Report at 8153 ("support obligations are not a tax"). Defendants argue, however, that as plaintiff is seeking a return of her tax refund, she is subject to the procedural limitations of a tax refund suit. Moreover, the jurisdictional limitations of 26 U.S.C. § 6305(b) are allegedly applicable to plaintiff's claim. 26 U.S.C. § 6305(b) attempts to preclude the courts of the United States from retaining jurisdiction to review or restrain the Secretary of the Treasury from assessing or collecting amounts under the "assessment" collection method. Although § 6305 makes no reference to the "transfer" collection method under challenge in the present action, defendants rely on language found in the House Conference Report that indicates the second collection method "amplified" prior law. *See* Committee Report at 604. Finally, the Secretary of the Treasury's own regulations provide that the past-due support under the "transfer" collection method is to be collected by offset "as if it were a liability for tax imposed by the Internal Revenue Code." Temp.Reg. § 304.6402–1(a)(1).

■ The Court must reject the defendants' contentions. First, there is nothing to suggest that the jurisdictional limitations of § 6305(b) are applicable to § 6402. The Treasury Regulations make clear that "[c]ollection by offset under section 6402(c) of this section is a collection procedure separate from the collection procedures provided by section 6305." A similar argument was rejected by the district court in *Nelson v. Regan,* No. N 82–173 (D.Conn., June 15, 1982) (order denying motion to dismiss). Second, the Court cannot agree with defendants that Congress intended that the assessment and collection of past-due support obligations be subject to the procedural limitations of a tax refund suit. Plaintiff is not seeking a tax refund in anything but a purely technical sense. The Internal Revenue Service has calculated the refund owing and that amount is not disputed. Unlike the "assessment" collection method, the Secretary of the Treasury under the "transfer" collection method does no more than retain and then pass on funds to the appropriate State agency. The Secretary does not determine the amount of past-due support owing nor collect any additional funds to satisfy the obligation. In other words, this is not a case where suit would interfere with the assessment and collection activities of the I.R.S. since those activities have already been completed. In fact, the Secretary of the Treasury refers individuals with questions about the transfer to the local State agency. The Court must conclude that the procedural and jurisdictional limitations of tax refund actions are inapplicable to plaintiff's suit. If Congress wanted these limitations to be applicable to the "transfer" collection method, they would have more clearly demonstrated their intent. *See* 26 U.S.C. § 6305.

The defendants' motion to dismiss is therefore DENIED. The Court finds that this is not a tax refund suit, that the Anti-Injunction Act and the similar limitations in the Declaratory Judgment Act are inapplicable to the present action, that sovereign immunity is waived under 5 U.S.C. §·702, and that subject matter jurisdiction is found in 28 U.S.C. § 1331(a).

■ The Court also finds that certification of plaintiff's proposed class is appropriate. The class consists of all residents of the State of Washington (1) who have filed joint Federal income tax returns for 1981; (2) whose spouses owe money to the State of Washington for child support; and (3) who were entitled to a refund of taxes withheld, not exclusively from their spouses' earnings, or to an earned income credit, all or part of which has been withheld by the Internal Revenue Service under the authority of 26 U.S.C. § 6402 or 42 U.S.C. § 664. The requirements of Fed.R.Civ.P. 23(a) have been met. There are thousands of potential class members, there are common questions of law and fact, the claims of plaintiff are typical of the class, and plaintiff and her counsel will fairly and adequately protect the interests of the class. Moreover, as plaintiff is not seeking anything but injunctive and declaratory relief and as defendants have employed their collection method uniformly throughout the class, final class-wide injunctive or declaratory relief is appropriate. Therefore, plaintiff's proposed class is certified pursuant to Fed.R.Civ.P. 23(b)(2).

Having dealt with defendants' procedural objections, the Court must reach the merits of plaintiff's suit.

EARNED INCOME CREDITS

Plaintiff's first claim concerns the language of the applicable statutes. 42 U.S.C. § 664 authorizes the Secretary of the Treasury to withhold "refunds of Federal taxes paid" and transfer these funds to the appropriate State agency to satisfy the debtor's support obligation. 26 U.S.C. § 6402(c) provides that the amount of any "overpayment to be refunded to the person making the overpayment" shall be reduced by the amount of past-due support. Plaintiff contends that earned income credits are not refunds of Federal tax and are therefore outside of the scope of the statutes. Allowing the Secretary to reach earned income credits would allegedly frustrate the Congressional purpose of benefiting poor children and giving their parents an incentive

to work. Finally, plaintiff contends that the term "overpayment" in § 6402(c) should be given its common sense meaning and that since earned income credits can be paid even if no Federal income tax is owed, the credits must have been excluded from the statutes.

■ Common sense is not, however, a useful guidepost in dealings with the Internal Revenue Code. Words with well-accepted meanings are often adapted by the Code into terms of very specific interpretation. "Overpayment" is a term of art. 26 U.S.C. § 6401(b) provides, in part, that if there are amounts allowable as credits under the earned income credit provisions in excess of Federal income taxes paid, then "the amount of such excess shall be considered an overpayment." It is perfectly consistent that Congress would consider the payment of past-due child support more important than the protection of an earned income credit. The Court finds that earned income credits are within the purview of the statutes and are subject to retention and transfer.

## VAN DYKE AND THE WASHINGTON PROPERTY LAW

The impetus for the present lawsuit was the Washington Supreme Court's holding in *Van Dyke v. Thompson,* 95 Wash.2d 726, 630 P.2d 420 (1981). Plaintiff's husband in *Van Dyke* owed the State of Washington for past-due child support for children from a prior marriage. He was unemployed and had no assets. Defendant Secretary of the Department of Social and Health Services served notice on plaintiff's employer to withhold and deliver to DSHS 25 percent of plaintiff's wages to satisfy her husband's obligation. Plaintiff filed suit seeking injunctive and declaratory relief. The Washington Supreme Court held that despite the fact that plaintiff's earnings were community property, they could not be used to satisfy the husband's separate debt. The court's prior holding in *Fisch v. Marler,* 1 Wash.2d 698, 97 P.2d 147 (1939), that only the earnings of the obligated spouse were subject to garnishment for past child support obligations was reaffirmed. Plaintiff contends that just as DSHS could not reach the non-obligated spouse's earnings in *Van Dyke,* so, too, should the tax refund generated by plaintiff's earnings be protected from transfer by the Internal Revenue Service.

Defendants assert that *Van Dyke* is inapplicable. They argue that *Van Dyke* is limited to the collection of separate debts under State law. They claim the proper analysis is that State law only determines whether the obligated spouse has a property interest in the overpayment created by the earnings of the nonobligated spouse. This determination being made in the affirmative, Federal collection law, not subject to the holding of *Van Dyke,* provides that the husband's half interest in the tax refund is reachable.

■ The parties do not dispute that the source of property law is Washington law. Under Washington law, however, the nature of the husband's interest in the earnings of the plaintiff is in some dispute. RCW § 26.16.030 provides that all property not acquired or owned as prescribed in RCW §§ 26.16.010 and .020 which is acquired after marriage by either husband or wife or both is community property. Separate property is limited to property owned by one of the spouses at the time of marriage or thereafter acquired by gift, devise or inheritance, and the rents, issues and profits thereof. RCW §§ 26.16.010 and .020. There is a presumption that all property obtained during marriage is community property. *See Yesler v. Hochstettler,* 4 Wash. 349, 30 P. 398 (1892). Under these statutes, plaintiff's husband would have a property interest in the tax refund since that refund would be community property.

The problem arises with the application of RCW § 26.16.200. The statute provides that:

Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other, nor is the rent or income of the separate property of either

liable for the separate debts of the other: *Provided,* That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage, and the earnings and accumulations of the wife shall be available to the legal process of creditors for the satisfaction of debts incurred by her prior to marriage. For the purpose of this section neither the husband nor the wife shall be construed to have any interest in the earnings of the other: *Provided Further,* That no separate debt may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties.

The Washington legislature added the two provisos in 1969. Prior to 1969, and except in limited cases, Washington followed the marital bankruptcy rule. Immediately upon a debtor's marriage, a creditor lost the ability to enforce his claim against the new marital community. *Watters v. Doud,* 92 Wash.2d 317, 322, 596 P.2d 280 (1979). The 1969 amendment with the addition of the provisos was meant "to alleviate the harsh effects of the previous law" and give the creditor three years in which to get payment of the debt or reduce the debt to judgment. *Id. See* Note, 45 Wash.L.Rev. 191 (1970). It seems clear that the amendment's purpose was to make more of the community assets available for separate creditors. *See* Cross, The Community Property Law In Washington, 49 Wash.L.Rev. 729, 829–30 (1974). What is not clear is the impact of the characterization of the property. In other words, what effect is to be given to the phrase "[no] interest in the earnings of the other"? Defendants contend that the nature of the tax refund is governed by RCW §§ 26.16.010–030 and that the refund is, therefore, community property. Plaintiff seems to argue that while the tax refund may be community property for most purposes, for purposes of collection of a separate debt, the property is not community property.

*Van Dyke* did not address the characterization issue. *Van Dyke* is a collection case. It held that the earnings of a noncustodial, nonobligated spouse are not subject to the antenuptial obligation of child support. That *Van Dyke* did not address the issue is not surprising. In terms of State law, there would be no difference between a limitation of property subject to creditors and a determination that an individual did not have a property interest in a particular asset. Either determination would prohibit the creditor subject to State law from reaching the asset. The distinction, however, becomes critical when Federal law comes into play.

The distinction was made in *United States v. Overman,* 424 F.2d 1142 (9th Cir. 1970). The issue in *Overman* was whether the United States could levy on community property to satisfy the separate tax obligation of one of the spouses. Defendants had argued that based on the pre-amended RCW § 26.16.200, the community property was immune from the husband's premarital debt. The Ninth Circuit held, however, that in order for the Government to reach the community property it was only necessary that the obligated spouse have a property interest in the asset. The court went on to hold that even if RCW § 26.16.200 created a limitation on the extent of ownership rights of the obligated spouse, it was of "no moment." If the taxpayer had a property interest in a particular asset, the Government could reach it. Furthermore, the Government could cause the involuntary conversion of the entire asset, although they were limited to retaining the half interest in the asset of the obligated spouse. This comports with the defendants' actions in the present case where half of the tax refund is retained.

The Court finds that the analysis of *Overman* controls the characterization issue. Admittedly, the language of the first proviso in RCW § 26.16.200 is troublesome. Also, *Overman* specifically did not address the statutory amendments. *See Overman,* 424 F.2d at 1145, n. 2. Still, it is undisputed that the tax refund is community property.

The creditor limitation is not a matter of substantive property law but only serves to insulate property from the reach of creditors. Exempt status of property under State law need not bind the Federal collector. *See United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971); *Broday v. United States,* 455 F.2d 1097 (5th Cir.1972). The Court cannot accept plaintiff's assertion of "limited status" property: community property for all purposes except for payment of separate debts.

Even assuming that RCW § 26.16.200 and *Van Dyke* need not bar defendants from retaining the tax refund, the question remains whether the Washington statute nonetheless precludes retention and transfer in light of Congressional intent. In other words, did Congress intend that property exemptions applicable to Washington State parties (such as Thompson in *Van Dyke*) be inapplicable to Federal parties?

26 U.S.C. § 6402(c) provides that the amount of any overpayment to be refunded to the person making the overpayment is to be reduced by the amount of any past-due support owed by that person. Thus, two determinations must be made. First, is there a person who is owed an overpayment? Second, does that person owe past-due support? If so, then the Secretary of the Treasury is directed to reduce the amount of overpayment owed to that individual by the amount of the past-due support. In our case, it is conceded that plaintiff's husband owes past-due support. Moreover, just as plaintiff's husband would be liable for Federal income taxes generated by plaintiff's community earnings, so, too, would he be entitled to the overpayment created by those community earnings. *See Bagur v. Commissioner,* 603 F.2d 491 (5th Cir.1979); *Simmons v. Cullen,* 197 F.Supp. 179 (S.D.Cal.1961). *Cf. United States v. Merrill,* 211 F.2d 297 (9th Cir. 1954). Plaintiff's husband would be owed the overpayment in the same manner as plaintiff. Therefore, retention of the husband's property interest in the overpayment generated by plaintiff's earnings is authorized under the literal language of the statute. Moreover, given the strong Federal policy favoring the collection of past-due support and the intent of Congress in the enactment of the "transfer" collection method to develop a collection method as an alternative to those already available to the States, the Court concludes that Congress did intend that Federal law prevail as to the method of reaching the plaintiff's husband's interest in the overpayment.

## DUE PROCESS

Plaintiff's final objection concerns the due process clause of the Fifth Amendment. Plaintiff contends that she is entitled to notice and an opportunity to be heard in regard to the transfer of the overpayment. Plaintiff emphasizes that she is not a judgment debtor and has not participated in any hearing procedure to determine the existence or the amount of any child support obligation.

In order to evaluate plaintiff's due process challenge, the particular procedures employed by defendants must be examined. There are seven steps to this process. First, a determination must be made that an individual owes child support. *See* 42 U.S.C. § 664(c). This determination is made by State court or administrative order and is presumably a process in which the obligated spouse has participated. Second, after the obligated spouse has failed to make the child support payments, the State agency notifies the Secretary of the Treasury that the individual has not paid and that a particular amount is past due. 42 U.S.C. § 664(a). Third, the Secretary of the Treasury determines whether any overpayment is due the named individual. Fourth, if there is any overpayment due, the Secretary is authorized to retain an amount equal to the past-due support and to transfer that amount to the State agency. 42 U.S.C. § 664(a). Fifth, the Secretary is to notify the person making the overpayment that "so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State." 26 U.S.C. § 6402(c). Sixth, if an additional claim is made to the Internal Revenue Service that the amount withheld is in error,

the Service will calculate the obligated spouse's interest in the overpayment and will refund the rest. Seventh, if the parties object to the recalculation, they are informed that they may file suit in the appropriate Federal court.

Two notices have been sent to plaintiff. The first informed her that her overpayment had been paid to the State of Washington to fully or partially satisfy a prior support obligation. The notice directed questions about the obligation to the Department of Social and Health Services in Olympia, Washington. The notice did not indicate that only half of the overpayment created by community earnings would be retained. Instead, it stated that if no other Federal taxes were owed, a refund check for any remaining balance would be issued. The second notice was sent during the pendency of the present action. It stated that pursuant to Washington community property law, half of the claim for refund was allowed. If plaintiff contested the amount, she could bring suit in the appropriate Federal District Court or the Court of Claims.

There can be little doubt that plaintiff has a property interest in the overpayment. Defendants concede that they may retain only half of the overpayment generated by community earnings. Nonetheless, they retain the full overpayment until an additional claim for refund is made. Placing the onus on the taxpayer to file a claim for a refund is allegedly necessary because "it is impossible for the Internal Revenue Service to make a prior determination of the proper allocation." As the determination simply consists of calculating the community interest in the overpayment and dividing by two, the Court strongly questions the impossibility of a prior conclusion. Even assuming the impossibility of such a result, there is no reason for the notice sent to plaintiff and her class not informing the nonobligated spouses that only half of the community property overpayment would be retained.

■ Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 399 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). One of the fundamental purposes of notice is to alert individuals that their interests are being affected and to permit adequate preparation to challenge those activities. *See Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 57 L.Ed.2d 30 (1978); *Transco Security, Inc. of Ohio v. Freeman,* 639 F.2d 318 (6th Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1982). *See also Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir. 1981) (due process requires that tenants receive notice of their right to receive retroactive payments). Without informing plaintiff and her class that only half of the community overpayment need be retained and that all would be retained unless an additional claim was asserted, defendants have made it at best onerous and at worst virtually impossible for individuals in plaintiff's position to obtain their uncontested share of the refund. If anything, the notice sent seems to imply that all of the overpayment would be retained regardless of its community or separate property nature. It is uncontested that the Department of Social and Health Services, the agency designated on the notice which would answer any questions, did not inform plaintiff, or anyone else submitting declarations in this lawsuit, that only half of the community overpayment need be retained. Considering that Washington is an "item" theory community property state and that each spouse has an undivided one-half interest in every community asset, *see In re Coffey's Estate,* 195 Wash. 379, 81 P.2d 283 (1938), and in light of recent Washington developments in regard to the availability of community assets for separate debts, *see deElche v. Jacobsen,* 95 Wash.2d 237, 622 P.2d 835 (1980), even assuming the nonobligated spouse was aware of the impact of community property law on the overpayment, believing that defendants could retain the entire amount would not be an unreasonable conclusion.

The Court must find that the notice is insufficient to apprise the nonobligated spouse of their right to at least half of the community overpayment. Under the standard adopted by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), no other result is possible. The private interest, that is, the interest of people in plaintiff's position receiving their uncontested share of the community overpayment, is significant. The risk of erroneous deprivation of such interest through the procedures used is substantial for individuals in plaintiff's class. The probable value of additional or substitute procedural safeguards is great considering that the defendants will not refund any of the overpayment absent an additional claim. Finally, the Government's interest in not providing the notice is small. The cost of adding one line to the present notice must be minimal. Even agreeing with defendants that calculation of the refundable interest of the nonobligated spouse absent an additional claim is impossible, a simple notice informing that spouse that an additional claim is necessary in order to obtain any overpayment is not only possible but obligatory. The Court assumes that after the additional claim for refund is made, defendants will promptly send the uncontested half of the community overpayment.

■ Plaintiff also seeks some form of hearing procedure where she may contest the retention of the overpayment. Presumably, a hearing would not be necessary regarding the undisputed half of the community overpayment for that half should be returned as soon as it has been calculated. Plaintiff's hearing request focuses on the contested half of the overpayment. At the hearing, plaintiff and people in plaintiff's position would raise both legal and factual defenses to the assessment.

To the extent a hearing is requested to assert the earned income credit and *Van Dyke* arguments discussed *supra,* no hearing would be required. Those being the only legal issues asserted by plaintiff, the Court concludes that a hearing to challenge the legality of the retention is not necessary. Plaintiff additionally asserts that a hearing is necessary to challenge the amount of retention. Specifically, she requests a proceeding where she could litigate the issue of ability to pay.

There is something uniquely inappropriate in involving the Federal Government in such a hearing. 42 U.S.C. § 664 and 26 U.S.C. § 6402 did, to a limited extent, put the Federal Government in the child support collection business. Those sections have not, however, resulted in an abandonment of the scheme whereby the States have the primary responsibility in the collection process. Under the "transfer" collection method, the defendants do no more than retain and transfer an amount certified by a State agency. They make no determinations of liability and ability to pay. It was the conduit nature of defendants' involvement which necessitated finding the "transfer" collection method was not subject to the procedural and jurisdictional limitations of a tax suit.

Plaintiff's argument does have some equitable appeal. Plaintiff was not a party to the proceeding where the support obligation was set nor was that obligation one owed by her. There are, however, proceedings available for someone in plaintiff's position to challenge the amount of the determination. *See* RCW § 26.09.170 (modification of decree of child support) and WAC § 388–11–140 (modification of administrative determination of support). At either proceeding the arguments of inability to pay and other factual defenses can be raised. Considering the existence of these other proceedings and the lack of Federal participation in the determination of the amount of child support, no additional hearings are required.

For the above-stated reasons, the Court finds and rules as follows:

1. Defendants' motion to dismiss is DENIED. The Court has subject matter jurisdiction and sovereign immunity is waived. The procedural limitations of a tax suit are deemed inapplicable to the present action.

2. Plaintiff's motion for class certification is GRANTED.

3. The cross-motions for summary judgment are GRANTED in part and DENIED in part. The Court finds that earned income credits are within the scope of the statutes. The Court also concludes that the limitations of *Van Dyke* are inapplicable to the Federal collector. Due process, however, requires that the notice of the overpayment being retained inform the individuals that only half of the community property overpayment will be retained if an additional claim for that half is made. Besides adequate notice, no additional proceedings are required by due process.

The Clerk of this Court is instructed to enter Judgment pursuant to this Order and to send uncertified copies of this Order and of the Judgment to all counsel of record.