[No. 11660–0–II.   Division Two.   July 13, 1989.]

*In the Matter of* VERNA J. MONTELL, ET AL.

VERNA J. MONTELL, ET AL, *Appellants,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*John S. Tracy* and *Tracy, McDaniel & Buchholz,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Frances E. Holmes* and *Jaqueline B. Rosenblatt, Assistants,* for respondent.

ALEXANDER, C.J.—Verna and James Montell, husband and wife, appeal the Kitsap County Superior Court's affirmance of a decision of the Department of Social and Health Services to the effect that James Montell was a "custodial stepparent" of Verna Montell's children and, thus, obligated for their financial support. We reverse.

Verna Montell is the natural mother of two children, Robert and Ronnie. The children were born of her marriage to Marion Arthur Fossum. That marriage was dissolved in 1972 and Verna was awarded custody of Robert and Ronnie, as well as two other children born of the marriage. In 1975, the dissolution decree was amended to give Fossum custody of Robert and Ronnie. The two children then began residing with him.

Verna married James Montell in 1978. In 1982, Robert and Ronnie went to live with the Montells because Fossum was sentenced to a term in prison. The two children remained with the Montells for the entire period of Fossum's incarceration, approximately 2 years. During that

period, James Montell voluntarily provided financial support for Ronnie and Robert. When Fossum was released from prison, Robert and Ronnie returned to live with him.

In 1984, DSHS began paying public assistance (Aid to Dependent Children) to Fossum, on behalf of Robert and Ronnie. Shortly thereafter, DSHS's office of support enforcement served the Montells with a notice that they were both financially responsible for the support of Robert and Ronnie. The Montells appealed to the Department, claiming that James had no financial responsibility for the support of the children. The matter was initially heard by an administrative law judge who made extensive findings of fact.[1] She concluded that James Montell was not a custodial stepparent and, thus, not liable for the support of the children. In this regard, the administrative law judge found:

The children went to live with their mother and Mr. Montell following the incarceration of their natural father. Mr. Montell was asked, and agreed to allow the children to live with him during this period. This arrangement occurred only because the children's natural father went to prison and lasted only for the period of his imprisonment. Following his release from prison, the children returned to live with their natural father . . .

The children's stay with the Montells may be likened to a visit since it was for a definite period of time, temporary in nature and for a specific purpose. The parties never intended for this arrangement to be permanent and Mr. Montell never intended to take on the responsibility of a custodial stepparent when he assumed this obligation.

The administrative law judge also concluded, for purposes of determining Verna Montell's support obligation for *Robert and Ronnie, that only one–half of the Montells'* community income and one–half of the community's interest in James Montell's military pension should be imputed

---

[1]These findings were actually contained within the ALJ's conclusion of law 2. It is appropriate, however, to refer to them as findings as the label applied to a finding or conclusion is not determinative; the court will treat it for what it really is. *Para–Medical Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717 (1987).

to Verna Montell for purposes of determining the amount of her support contribution pursuant to WAC 388–11–190.

DSHS's office of support enforcement sought review of the administrative law judge's decision. The review judge adopted the administrative law judge's findings, but concluded from those findings that James Montell was a "custodial stepparent" and, thus, individually liable for the support of Robert and Ronnie. In addition, the review judge concluded that the Montells' "net income," for purposes of determining their support obligation, included all of the marital community's income, not merely Verna Montell's one–half community interest. The Montells appealed the review judge's decision to the Kitsap County Superior Court, which affirmed. The Montells thereafter appealed to this court.

The review of decisions of state administrative agencies is governed by the administrative procedure act, former RCW 34.04. Judicial review of administrative decisions is on the record of the administrative tribunal itself, not the record made in the superior court. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). Because the Montells do not assail the facts found by the administrative law judge and affirmed by the review judge, our review is under the error of law standard. Former RCW 34.04-.130(6)(d). Under this standard, an appellate court may substitute its determination for that of the agency, although the agency's determination is entitled to substantial weight. *Franklin Cy. Sheriff's Office v. Sellers, supra.*

The primary issue on appeal is this: Did the administrative agency err in concluding from the undisputed facts that James Montell was a "custodial stepparent" and, thus, chargeable with the support of Robert and Ronnie? If James Montell is not chargeable with the support of Robert and Ronnie, a secondary issue is presented: Is WAC 388–11–190 invalid to the extent it takes into consideration a noncustodial stepparent's community earnings in calculating an obligated parent's support liability?

### 1. Liability of Stepparent for Support of Stepchildren

Liability of stepparents for the support of their step-children is governed by RCW 26.16.205, which provides:

> The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately: *Provided,* That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife.

■ Notwithstanding the far–reaching language of the statute, our State Supreme Court has concluded that this statute imposes liability for support of stepchildren only upon "custodial stepparents." *Van Dyke v. Thompson,* 95 Wn.2d 726, 730, 630 P.2d 420 (1981). The court in *Van Dyke* concluded that RCW 26.16.205 did not effect a departure from the common law rule that only those step-parents standing "in loco parentis" to a stepchild are legally obligated to support and educate the child. *Van Dyke,* 95 Wn.2d at 729, citing *Taylor v. Taylor,* 58 Wn.2d 510, 512, 364 P.2d 444 (1961).

Under the common law rule, an "in loco parentis" relationship becomes established only when a stepparent *intends* to assume the status of a parent. *State ex rel. Gilroy v. King Cy.,* 37 Wn.2d 926, 934, 226 P.2d 882 (1951); *Taylor,* 58 Wn.2d at 512. The mere taking of a stepchild into the home does not establish such a relationship unless the stepparent manifests an intent to assume the status of parent toward the child. *See State v. Gillaspie,* 8 Wn. App. 560, 507 P.2d 1223 (1973) (holding that the relationship of stepparent and stepchild confers no rights and imposes no duties upon either unless a child is taken into the home of the stepparent *and* the relationship of in loco parentis established).

The determination of whether an in loco parentis relationship is established, therefore, is a mixed question of law and fact, which turns primarily upon the factual determination of intent. As noted above, the facts in this case are

not in dispute, and, consequently, our focus must be on the resolution of the legal issue from those facts.

In this regard, the finding of the ALJ, which was adopted by the review Judge, was that James Montell never intended to have the boys reside with him permanently and that he never intended to take on the responsibility of a custodial stepparent when he assumed the obligation of caring for the boys while their father was incarcerated. Despite this finding of a lack of intent by James Montell to assume a custodial stepparent relationship, the review Judge and Superior Court concluded that James Montell's financial support and assumption of physical custody of the boys for the 2 years during which Fossum was in prison was sufficient to establish an in loco parentis relationship on the part of James Montell. We disagree.

In our judgment, a conclusion that the common law relationship of in loco parentis is established merely by the assumption of support for a definite period of time, without consideration of the intent of the stepparent, is not only contrary to the established case law, but it is poor public policy. As noted above, it is contrary to the established case law, because it completely disregards the intent of the stepparent. *See State ex rel. Gilroy v. King Cy., supra; Taylor v. Taylor, supra.* It is poor public policy because stepparents, faced with circumstances similar to those confronting James Montell, would very likely be averse to bringing stepchildren into their home voluntarily if by doing so they would be subjected to continuing liability for the support of the stepchildren. Voluntary assumption of support of stepchildren is to be encouraged, and we fail to see how the result sought by DSHS would promote such a desirable end.

2. Validity of WAC 388–11–190

Having concluded that James Montell is not a "custodial stepparent" and thus not chargeable for the support of Robert and Ronnie Fossum, we must decide whether WAC 388–11–190, which establishes the formula for computation

of an obligated parent's minimum support contribution, is invalid.[2]

Pursuant to WAC 388–11–190, an obligated parent's support contribution is based on a percentage of his or her "net income," which term is defined as:

> all income of the responsible parent, including, if married, *all income available to the marital community* of which the responsible parent is a member remaining after the deduction from that income of any amount required by law to be withheld.

(Italics ours.) Former WAC 388–11–190(4). The issue presented here is whether or not this regulation, which mandates consideration of the earnings of a nonobligated spouse in calculating the support obligation of an obligated spouse, *conflicts with the rule that the earnings of a non-custodial, nonobligated stepparent are exempt from the antenuptial obligation of child support.* RCW 26.16.200; *Van Dyke,* 95 Wn.2d at 732–33 (holding that a child support obligation incurred prior to the marriage may be pursued only against the earnings of an obligated spouse in the new community).

■ Admittedly, the administrative regulation does not expressly conflict with this rule, in that it does not directly "subject" a nonobligated spouse's earnings to the antenuptial debt of child support. The practical effect of the regulation, however, is to impose a support obligation upon the obligated spouse which is based upon the earnings of the nonobligated spouse. While the obligation technically may remain a separate debt of the obligated spouse, the fact that it is based on the income of both spouses necessarily brings indirect pressures to bear on the nonobligated

---

[2] We note that after the initiation of this proceeding, DSHS repealed WAC 388–11–190. *See* State Register 88–18–031 (Order 2689, filed Aug. 30, 1988). Because Verna Montell's individual liability for support for the period prior to the repeal of WAC 388–11–190 would conceivably remain subject to the formula set forth therein, we find it appropriate to address the validity of the regulation despite its subsequent repeal.

spouse, especially where the obligation is reduced to judgment.

Such a result, we believe, raises the same public policy concerns noted in *Van Dyke,* with regard to subjecting a nonobligated spouse's earnings to the other spouse's antenuptial responsibility for child support. In concluding that such a result was contrary to public policy, the court in *Van Dyke* stated:

> It would discourage marriage; it would encourage married persons to live separate and apart and thereby characterize their earnings as separate property; it would place unwarranted stress upon a second marriage which is already faced with the tensions and demands both emotional and financial of dealing with children of the first marriage.

*Van Dyke,* 95 Wn.2d at 732. We believe the Department's regulation promotes the same result noted above and, consequently, conclude that it is contrary to public policy.

In summary, although we do not seek to discourage contribution of support by a nonobligated spouse, we nevertheless perceive that the Department's regulation is contrary to the case law, as well as to public policy. Accordingly, we believe the regulation to be invalid to the extent it takes into consideration a nonobligated spouse's earnings in establishing the support liability of an obligated spouse.

Because the Montells do not contest the administrative law judge's determination that one–half of the community earnings should be imputed to Mrs. Montell for purposes of determining her support liability, we limit our holding to the relief requested by them and, thus, remand with instructions that Verna Montell's support liability be computed based on her separate income plus one–half of the community earnings.[3]

---

[3]Under our holding, any imputation of a nonobligated spouse's earnings to an obligated spouse for purposes of determining the support obligation of an obligated spouse is inappropriate. We would note, however, that the income of the

The Montells' request for attorney's fees, pursuant to RCW 74.08.080, is denied. *See Johnstun v. Department of Social & Health Servs.,* 53 Wn. App. 140, 766 P.2d 1104 (1988).

REED and PETRICH, JJ., concur.

---

nonobligated spouse is not entirely immaterial and may be considered in determining the economic condition of the obligated spouse as it pertains to the spouse's ability to support his or her children. *See In re Marriage of Cook,* 28 Wn. App. 518, 522–23, 624 P.2d 743 (1981).