Dalleen **RUCKER, Plaintiff-Appellant,**

Kathy **Warner, Intervenor-Appellant,**

v.

The **SECRETARY OF the TREASURY OF the UNITED STATES, and The United States of America, Defendants-Appellees,**

Rosa Ortega, Intervenor.

No. 83–1804.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1984.

Glenn Meyers of Colorado Rural Legal Services, Inc., Denver, Colo. (Jacquelyn Higinbotham of Colorado Rural Legal Services, Inc., Fort Morgan, Colo., with him on the brief), for plaintiff-appellant and intervenor-appellant.

Jo-Ann Horn, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Robert N. Miller, U.S. Atty., Denver, Colo., of counsel; Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Richard Farber, Attys., Tax Div., Dept. of Justice, Washington, D.C., with her on the brief), for defendants-appellees.

Before SETH, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Dalleen Rucker brought this class action against the Secretary of the Treasury and the United States, challenging the application to her of section 464 of the Social Security Act, 42 U.S.C. § 664 (1982). Kathy Warner subsequently joined the action as an intervenor. Plaintiffs alleged that the Secretary exceeded his statutory authority by withholding federal income tax refunds and earned income credits due them. They sought declaratory and injunctive relief. The district court dismissed Rucker's claims as moot and also dismissed Warner's intervenor claim. We reverse.

## I.

## BACKGROUND

This case involves the federal-state intercept program authorized by section 2331 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 860 (1981) (Omnibus Act). Under this program, federal income tax refunds due a taxpayer may be transferred to a state to the extent of a taxpayer's past-due child support obligations. Two provisions of the Omnibus Act are relevant here. The first is an amendment to the Social Security Act, 42 U.S.C. § 664 (1982), which provides for reimbursing states that have supported the taxpayer's children through the Aid to Families with Dependent Children program (AFDC).[1] Section 664(a) authorizes the Secretary of the Treasury to withhold "refunds of Federal taxes paid" which are due to a parent of children supported by AFDC, and to transfer these funds to an appropriate state agency to satisfy the parent's child support obligation.[2] The second pro-

---

**1.** 42 U.S.C. § 602(a)(26) (1982) requires the parent to whom child support payments are due to assign the right to such payments to a state as a precondition to AFDC eligibility in that state.

**2.** 42 U.S.C. § 664(a) provides:
"Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 602(a)(26) of this title, the

Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the indi-

vision is an amendment to section 6402 of the Internal Revenue Code, 26 U.S.C. § 6402(c) (1982), which implements the procedure authorized by section 664(a) and provides that "[t]he amount of any overpayment to be refunded to the person making the overpayment" shall be reduced by the amount of any past-due child support.[3]

Plaintiff Dalleen Rucker is a married woman and a Colorado resident. Her husband is indebted to the State of Colorado for his failure to make required support payments to the children of his prior marriage.[4] In April 1982, Rucker and her husband filed a joint 1981 Federal income tax return, expecting to receive $1,124 back from the Internal Revenue Service. This sum consisted of an income tax refund and an earned income credit. In June 1982, the IRS notified the Ruckers by letter that this sum was being withheld to satisfy Mr. Rucker's child support obligations. In August 1982, Rucker filed an amended tax return seeking a refund of that portion of the overpayment of income taxes and the earned income credit allocable to her. She subsequently received a refund of $126, which represented the entire amount of her excess wage withholdings and a portion of the earned income credit.[5]

Immediately after filing her amended tax return, and before receiving the $126 refund, Rucker brought this action claiming that defendants exceed their statutory authority by intercepting and withholding funds owed to a taxpayer who is the nonobligated spouse of a child support obligor. She also claimed that defendants' taking money due to a married taxpayer to satisfy obligations of a spouse, without affording the taxpayer notice and an opportunity to contest the liability, is a taking of property without due process in violation of the Fifth Amendment.

The district court dismissed plaintiffs' claims on the grounds of mootness.[6] *Rucker v. Secretary of the Treasury,* 555 F.Supp. 1051, 1053 (D.Colo.1983). The court held that Rucker's Fifth Amendment and tax refund claims were moot because she had received her allocable share of the income tax refund. The court also ruled that earned income credits are subject to the intercept program and that Rucker's earned income credit claim was also moot because she had received an allocable share of this credit. On appeal, Rucker raises only the issue whether earned income credits are subject to the intercept program and whether they lawfully can be withheld under section 664(a).

---

vidual's home address) for distribution in accordance with section 657(b)(3) of this title."

3. 26 U.S.C. § 6402(c) provides:
"The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax."

4. Mr. Rucker's former wife assigned her right to support payments to the State of Colorado. *See* note 1, *supra.*

5. The refund to Rucker consisted of $31 in excess wage withholdings and $95 of the earned income credit. The record does not reflect the dollar amount of the earned income credit withheld to satisfy Mr. Rucker's support obligation. We assume that some portion of the credit was withheld, inasmuch as the defendants concede that Rucker received only a "proportionate" share. Appellees' Brief at 4; *see Rucker v. Secretary of the Treasury,* 555 F.Supp. 1051, 1052–53 (D.Colo.1983).

6. The court also dismissed intervenor Warner's claims. Warner had not received from the IRS any portion of the earned income credit to which she claimed entitlement. The court apparently reasoned that having adopted the allegations of Rucker's complaint, Warner lacked independent jurisdictional grounds once Rucker's claim was dismissed as moot. In light of our decision concerning the dismissal of Rucker's claim, we need not reach this issue.

## II.

### MOOTNESS

■ Defendants assert that there is no case or controversy to support federal court jurisdiction, as required by article III, section 2 of the United States Constitution, because Rucker has received her allocable share of the earned income credit. Defendants claim that it was unnecessary and purely advisory for the trial court to consider whether the earned income credit could be withheld under section 664, and that no justiciable issue is presented to this court on appeal. *See Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Norvell v. Sangre de Cristo Development Co.*, 519 F.2d 370, 375 (10th Cir.1975); *Oklahoma City, Oklahoma v. Dulick*, 318 F.2d 830, 831 (10th Cir.1963).

This argument misconceives the nature of Rucker's claim. As we read Rucker's complaint, she is clearly claiming that defendants have exceeded their statutory authority by withholding *any* of the earned income credit due to her and her husband as a family unit. The IRS refunded only what it determined to be the portion of the credit allocable to her alone. The remaining portion of the credit has not been refunded to the Ruckers and Mrs. Rucker's claim to the remainder provides the necessary controversy needed to support federal court jurisdiction. In arguing to the contrary, defendants assume the very issue in this case: whether the earned income credit can be allocated among spouses and a portion of it withheld under section 664 to satisfy one spouse's child support obligations. Consequently, Rucker's claim is not moot.

## III.

### SOVEREIGN IMMUNITY

Defendants argue that if Rucker's claim is not moot, it is barred by her failure to comply with the jurisdictional requirements of the Internal Revenue Code, 26 U.S.C. § 7422(a) (1982), which provides that no suit may be maintained for the recovery of any tax until a claim for refund has been duly filed with the IRS. They argue that Rucker's suit, instituted after her refund claim had been filed but prior to the expiration of the six-month period set forth in 26 U.S.C. § 6532(a)(1) (1982),[7] is barred by the doctrine of sovereign immunity. *See, e.g., Dieckmann v. United States*, 550 F.2d 622, 623 (10th Cir.1977); *United States v. Freedman*, 444 F.2d 1387, 1388 (9th Cir. 1971), *cert. denied*, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971); *Oldland v. Kurtz*, 528 F.Supp. 316, 322–23 (D.Colo. 1981).

■ A number of courts have addressed this very issue in the context of challenges to the intercept program. Almost all have concluded that claims to withheld tax refunds and earned income credits are not barred by sections 7422(a) and 6532 of the Internal Revenue Code. *See Nelson v. Regan*, 731 F.2d 105, 109 (2d Cir.1984); *Jahn v. Regan*, 584 F.Supp. 399, 408 n. 17 (E.D.Mich.1984); *Sorenson v. Secretary of the Treasury*, 557 F.Supp. 729, 732–33 (W.D.Wash.1982), *appeal docketed*, No. 83–3694 (9th Cir. Mar. 23, 1983); *cf. Marcello v. Regan*, 574 F.Supp. 586, 594 (D.R.I. 1983) (26 U.S.C. § 7421(a) likewise does not bar these challenges); *Coughlin v. Regan*, 584 F.Supp. 697, 705–06 (D.Maine 1984) (same). *But see Vidra v. Egger*, 575 F.Supp. 1305, 1307–08 (E.D.Pa.1982). As these decisions recognize, the statutory language of section 7422(a) and the policies prohibiting judicial intervention in tax col-

---

7. 26 U.S.C. § 6532(a)(1) provides:

"No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a deci-

sion thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

lection and assessment are not applicable to challenges to the intercept program. The intercept program operates only after tax assessment and collection, when the federal government ceases to have an interest in the tax refunds. Judicial review at this point will not interfere with or thwart the government's ability to collect taxes or its need for steady and predictable tax revenues. *See, e.g., Marcello,* 574 F.Supp. at 594. *Cf. Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974). Accordingly, we conclude that plaintiffs' claims for earned income credit benefits are not barred by sections 7422(a) and 6532 of the Internal Revenue Code.

## IV.

## EARNED INCOME CREDIT WITHHOLDING

As noted above, 42 U.S.C. § 664(a) authorizes the Secretary of the Treasury to withhold "refunds of federal taxes paid" which are due to an obligated spouse. In addition, 26 U.S.C. § 6402(c) provides that the amount of any "overpayment to be refunded to the person making the overpayment" shall be reduced by the amount of past-due child support. Rucker asserts that the earned income credit is neither a "refund of federal taxes" nor an "overpayment" within the meaning of these two statutory provisions, and thus is not subject to withholding in the intercept program.

The earned income credit is a benefit available to certain families with dependent children and with an earned family income of less than $10,000 per year. *See* 26 U.S.C. § 43 (1982). The maximum credit allowed is $500. It is reduced proportionately as the adjusted gross family income increases above $6000, dropping to zero at $10,000. It was designed to provide relief to low income families who pay little or no income tax, and it was intended to provide an incentive for low income people to work

rather than to receive federal assistance. *See* S.Rep. No. 94–36, 94th Cong., 1st Sess. 11 (1975), *reprinted in* 1975 U.S.Code Cong. & Ad.News 54, 63–64. While the credit benefits are distributed through the tax refund process, a recipient need not have owed or paid any taxes to be eligible. *See Nelson,* 731 F.2d at 109; *In re Searles,* 445 F.Supp. 749, 752–53 (D.Conn.1978). A refund of federal taxes is a repayment of money paid by a taxpayer in excess of that taxpayer's liability. Although the earned income credit is given effect through the income tax return, the credit is not a tax refund because eligibility for the credit is not contingent upon payment of any federal income tax. *Id.; In re Hurles,* 31 B.R. 179, 180 (Bankr.S.D.Ohio 1983). Section 664(a), which authorizes interception only of "refunds of federal taxes paid," does not itself authorize interception of the earned income credit.

Defendants argue, however, that while section 664(a) may not authorize the withholding of earned income credits, such withholding is expressly authorized by section 6402(c) of the Internal Revenue Code because the earned income credit is an "overpayment" subject to interception. They point out that section 6401 of the Internal Revenue Code, 26 U.S.C. § 6401, defines "overpayment" to include the excess of an earned income credit over tax liability, and that this excess exists even when there is no tax liability.[8] Rucker counters that because section 6402(c) only authorizes an offset against an "overpayment to be refunded to the person making the overpayment," the earned income credit is not an "overpayment" that can be withheld under section 6402(c).

Courts that have faced this issue have reached conflicting results. *Compare Nelson,* 731 F.2d at 111–12 (the earned income credit is not subject to interception under 26 U.S.C. § 6402(c)) *with Coughlin,* 584 F.Supp. at 706–07 (26 U.S.C. § 6402(c) authorizes interception of the earned income

---

**8.** 26 U.S.C. § 6401 provides in pertinent part:
    (b) If the amount allowable as credits under section ... 43 (relating to earned income

credit) exceeds the tax imposed by subtitle A ... the amount of such excess shall be considered an overpayment."

credit), *and Sorenson,* 557 F.Supp. at 733–34 (W.D.Wash.1983) (same). For the reasons set forth below, we believe the Second Circuit's decision in *Nelson* is the better view.

As the *Nelson* court notes, the term "overpayment," broadly defined in section 6401 but limited in section 6402 by the phrase "to be refunded to the person making the overpayment," is ambiguous with regard to the earned income credit. Section 6401 is a general provision in the chapter on Abatements, Credits, and Refunds of the Internal Revenue Code, governing the tax refund process. *See Nelson,* 731 F.2d at 111. Section 6402(c) and section 664(a), on the other hand, were both enacted as part of the Omnibus Act, which established the tax intercept program. *Id.* Interpreting the term "overpayment" in section 6402(c) so as not to include the earned income credit results in consistency with section 664(a) which authorizes only withholding of federal tax refunds. Moreover, we believe that this interpretation furthers the congressional purpose in enacting the earned income credit. Reducing the amount of the earned income credit due to a low income working family would reduce the family members' incentive to work, and would frustrate the congressional goals of providing relief to low income families, encouraging work, reducing dependence on federal assistance, and stimulating the economy. *See id.* at 111–12; *cf., In re Searles,* 455 F.Supp. at 752–53 (discussing the adverse effects of including the credit in a bankrupt's property).

Defendants claim and the district court agreed, that the tax intercept program's goal of enforcing child support obligations should take priority over the policies underlying the earned income credit. *See Rucker,* 555 F.Supp. at 1053. We are not persuaded. The intercepted funds are not paid to support the obligated taxpayer's child but to reimburse a state for its support of that child in the past. The earned income credit, on the other hand, directly benefits the dependent children of the low income taxpayer. In the absence of evidence that Congress intended such a sub-stantial cutback on the earned income credit program, we interpret the intercept legislation before us so as to avoid both conflict between the provisions of the Omnibus Act and a result clearly at odds with the goals of the earned income credit program. We hold that 26 U.S.C. § 6402 and 42 U.S.C. § 664 do not authorize the withholding of any portion of the earned income credit due an otherwise eligible recipient.

The judgment is reversed and remanded to the district court for further proceedings.