752 F.2d 1433
 55 A.F.T.R.2d 85-811, 53 USLW 2409, 85-1
USTC P 9240,
1 Fed.R.Serv.3d 101
 Marie D. SORENSON, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
The SECRETARY OF the TREASURY OF the UNITED STATES; and The
United States of America, Defendants-Appellees.
 Nos. 83-3694, 83-3702.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1984.
Decided Feb. 5, 1985.
 
 Peter Greenfield, Evergreen Legal Services, Seattle, Wash., for plaintiff-appellant.
 Richard Farber, Jo-Ann Horn, Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court For the Western District of Washington.
 Before WRIGHT and HUG, Circuit Judges, and EAST,* District judge.
 HUG, Circuit Judge:
 
 
 1
 This appeal involves a challenge to the manner in which the Secretary of the Treasury has implemented the "tax intercept" program. The tax intercept program authorizes the Secretary to withhold tax refunds owed to parents who have delinquent child support obligations and to transfer those funds directly to the states as reimbursement for expenditures made by the states to support the affected children under the Aid to Families with Dependent Children (AFDC) Program.
 
 
 2
 Sorenson brought this action on behalf of herself and a class of similarly situated persons, seeking a declaratory judgment, an injunction, and refunds of amounts alleged to be wrongfully withheld. The district judge certified the class, entered a declaratory judgment, and later an injunction requiring certain notice to be provided to the class. The district judge denied a refund to Sorenson and the class. Sorenson appeals and the Secretary cross appeals.
 
 FACTS
 
 3
 Sorenson is a married woman who lives in the State of Washington. Her husband is indebted to the State for his failure to make the required child support payments to the children of his prior marriage. When the State gave financial assistance to his former wife, the State took an assignment of the past due child support, as it is required to do under the AFDC program. In February, 1982, Sorenson and her husband filed a joint 1981 federal income tax return. All of the income was from Sorenson's wages and unemployment benefits. Sorenson and her husband were to receive a tax refund of $1,408, consisting of excess withheld wages and an earned income credit.
 
 
 4
 Sorenson did not, however, receive her expected refund. The Internal Revenue Service ("IRS") withheld payment of the refund so that it could be offset against the amount owed to the State of Washington because of her husband's nonpayment of child support. After unsuccessfully trying to obtain her refund from the local office of the IRS and from the Washington State Department of Social and Health Services, to which the IRS referred her, Sorenson filed a complaint in the present action on April 22, 1982. Sorenson sought, among other forms of relief, (1) leave to proceed on behalf of a class, (2) a declaration that the tax intercept statutes do not apply to earned income credits, (3) a declaration that the tax intercept statutes do not authorize the taking of funds withheld from community earnings except from funds withheld from the earnings of an individual having a child support obligation to a state, (4) a declaration that the taking by the IRS of money due to married taxpayers to satisfy child support claims against one spouse constitutes taking of property without due process, and (5) an order requiring that the money owed to class members as refunds or earned income credits and held on the basis of the tax intercept statutes be released to class members.
 
 
 5
 The Secretary moved to dismiss Sorenson's suit on the grounds that the district court lacked subject matter jurisdiction, that the action was barred by sovereign immunity, and that several procedural limitations pertaining to tax suits precluded the court from granting the relief requested. That motion was denied. Sorenson moved for certification of a class, and that motion was granted. Both parties moved for summary judgment on the substantive issues. The Secretary had originally taken the position that, under Washington community property law, all of the overpayment of tax resulting from the income of Sorenson's husband and one-half of the overpayment resulting from Sorenson's income was to be retained and paid over to the State of Washington for payment of Sorenson's husband's child support obligation. The Secretary later clarified his policy and claimed only one-half of the total community property overpayment. Sorenson contended that, under Washington community property law, it was unlawful for the Secretary to retain and transfer the remaining one-half of the refund resulting from her earnings and that it was contrary to federal law to retain and transfer the remaining one-half of the earned income credit due to her or her husband.
 
 
 6
 The district court held that, under Washington community property law, the Secretary could properly retain and transfer to the State one-half of the refund resulting from Sorenson's earnings, but that due process required the Secretary to notify other class members that he could only retain one-half of the community property overpayment and, thus, of their legal right to a refund in the instances when more had been retained. The district court further held that the earned income credits were tax refunds within the scope of the intercept statutes and thus could be retained and transferred to the State.
 
 ISSUES
 
 7
 A number of issues were resolved in the district court and are not contested on appeal. We refer to the thorough and carefully written opinion of the district court concerning these issues. See Sorenson v. Secretary of the Treasury of the United States, 557 F.Supp. 729 (W.D.Wash.1982). Our focus in this appeal is only on those issues now raised by the parties.
 
 
 8
 There is only one issue involved in Sorenson's appeal on behalf of herself and the class certified by the district court. The issue is whether any of the earned income credit authorized under the provisions of the Internal Revenue Code, 26 U.S.C. Sec. 43 (1982), may be intercepted in the same way as overpayments of taxes that are due to the taxpayer.
 
 
 9
 In the cross appeal, the Secretary raises several issues. The Secretary contends that:
 
 
 10
 1. The federal court lacks subject matter jurisdiction to review matters concerning the tax intercept system because judicial review is precluded by 26 U.S.C. Sec. 6305(b),
 
 
 11
 2. Declaratory relief granted to the class was improper because the Declaratory Judgment Act expressly prohibits granting such relief with respect to federal taxes,
 
 
 12
 3. Injunctive relief granted to the class was improper because the Anti-Injunction Act prohibits restraining the assessment or collection of a tax,
 
 
 13
 4. The doctrine of sovereign immunity precludes the refund Sorenson seeks because she failed to follow the prescribed procedural requirements, and
 
 
 14
 5. The class certification was improper.
 
 CROSS APPEAL
 
 15
 We discuss first the issues raised on the cross appeal, because these issues involve jurisdictional matters or matters that would otherwise be dispositive of Sorenson's claims.
 
 SUBJECT MATTER JURISDICTION
 Section 6305(b)
 
 16
 The Secretary contends that pursuant to 26 U.S.C. Sec. 6305(b) (1982) the federal courts are without jurisdiction to review matters concerning the tax intercept system. We disagree. The Secretary fails to distinguish between two separate statutory schemes by which he is authorized to collect delinquent child support payments to reimburse the states.
 
 
 17
 There is an older system of collection, under which the Secretary of the Department of Health, Education, and Welfare is authorized, upon the request of a state, to certify to the Secretary of the Treasury the amount of any child support obligation assigned to that state. See 42 U.S.C. Sec. 652(b). Parents are required, as a condition of eligibility for welfare, to assign their rights to support payments to the state, and the support obligation thereby becomes a debt owed by the obligated parent to the state. The Secretary of the Treasury is then required to assess and collect the amount certified "in the same manner and with the same powers, and ... subject to the same limitations as if such amount were a tax...." 26 U.S.C. Sec. 6305(a). This method is hereafter referred to as the "assessment" method of collection.
 
 
 18
 The second method of collection, and the one at issue here, is the "intercept" method. This scheme also is triggered by the Secretary of the Treasury receiving notice from a state that an individual owes past-due support that has been assigned to the state as a condition of welfare eligibility. The Secretary then determines whether any amounts are payable to that individual as refunds of federal taxes paid, and he is then authorized to withhold from such refunds an amount equal to the past-due support and to pay that money directly to the state agency to which it is owed. See 26 U.S.C. Sec. 6402(c) and 42 U.S.C. Sec. 664. Unlike the "assessment" method, the "intercept" method involves the transfer of funds already in the possession of the Government and undisputedly already owed to the taxpayer as a refund.
 
 Section 6305(b) provides that
 
 19
 [n]o court of the United States ... shall have jurisdiction of any action, whether legal or equitable, brought to restrain or review the assessment and collection of amounts by the Secretary under subsection (a), nor shall any such assessment and collection be subject to review by the Secretary in any proceeding.
 
 
 20
 26 U.S.C. Sec. 6305(b). The question arises whether this limitation upon federal jurisdiction with respect to the "assessment" method of collection applies also to the "intercept" method at issue in the present case. We hold that it does not.
 
 
 21
 The "assessment" and "intercept" methods of collection are similar in purpose but not in operation. The very acts upon which section 6305(a) pivots--assessment and collection--have no part in the "intercept" method; and it is precisely these pivotal actions that section 6305(b) shields from federal judicial interference. See Marcello v. Regan, 574 F.Supp. 586, 592-94 (D.R.I.1983). Further, although section 6305(a) was slightly amended in 1981 by the same act of Congress that created the new "intercept" program, Congress did not amend section 6305(b) to refer to the new program. On the contrary, the legislative history of the tax intercept statutes makes only fleeting reference to the "assessment" method, stating merely that the intercept program "amplifies" the Secretary's already existing authority under section 6305(a). H.R.Con.Rep. No. 208, 97th Cong., 1st Sess. 35, reprinted in 1981 U.S.Code Cong. & Ad.News 396, 1010, 1347. This reference is no support for the Secretary's contention. The limitation on jurisdiction created by section 6305(b) refers only to "assessment and collection of amounts by the Secretary under subsection (a)" and not to the transfer under section 6402(c) of funds already collected and owed to the taxpayer as a refund.
 
 Declaratory Relief
 
 22
 The Declaratory Judgment Act, 28 U.S.C. Sec. 2201 (1982), authorizes a federal court to grant declaratory relief in a case of actual controversy within its jurisdiction, whether or not further relief is or could be sought. However, the Act expressly prohibits the granting of such relief "with respect to federal taxes." The question in the present case is whether the declaratory relief sought by petitioner is relief "with respect to federal taxes." The district court held that it was not, and we agree.
 
 
 23
 There was no question in this case with respect to Sorenson's federal tax liability. The question rather concerned the disposition of funds that the Secretary had determined were owed to Sorenson as a refund of taxes withheld and an earned income credit. It was only because the funds were undisputedly owed to petitioner and undisputedly not owed to the United States as taxes that the Secretary proposed to transfer them to the State of Washington.
 
 
 24
 As this court stated in State of California v. Regan, 641 F.2d 721, 722 (9th Cir.1981),
 
 
 25
 [t]he purpose of the federal tax exception to the Declaratory Judgment Act is to protect the government's ability to assess and collect taxes free from pre-enforcement judicial interference, and to require that disputes be resolved in a suit for refund.
 
 
 26
 (Citations omitted.) The present suit would not interfere with the assessment and collection activities of the IRS since those activities have been completed. We see no reason, therefore, why the federal tax exception to the Declaratory Judgment Act should be applied here.
 
 Injunctive Relief
 
 27
 The district court held that the Anti-Injunction Act, 26 U.S.C. Sec. 7421(a) (1982), which prohibits suits "for the purpose of restraining the assessment or collection of any tax," was inapplicable to the present case. The Secretary does not appeal this ruling but contends instead that injunctive relief was improper because Sorenson had an adequate remedy at law, namely a tax refund suit.
 
 
 28
 The only injunctive relief granted by the district court was an order requiring the Secretary to notify class members of their right to one-half of the community property overpayment. The court issued a declaratory judgment that class members had a due process right to such notice; and when the Secretary failed to act on this declaration, the district court ordered him to do so. The Secretary apparently does not seek review of this order, and the district court was correct in any case. Under the circumstances, a tax refund suit would not provide an adequate remedy for a class of plaintiffs who have virtually no means of discovering that they are entitled to such a refund.
 
 
 29
 Petitioner no longer seeks an order requiring the Secretary to release funds to the plaintiff class, and she now characterizes her individual action as a tax refund suit. This court therefore need not rule on whether a tax refund suit provides an adequate legal remedy that would preclude a court from ordering the Secretary to release the intercepted refunds to the class.
 
 SOVEREIGN IMMUNITY
 
 30
 The Secretary contends that the doctrine of sovereign immunity bars Sorenson's individual refund action on the grounds that she failed to meet the procedural requirements of 26 U.S.C. Secs. 6532(a)(1) and 7422(a) (1982). The latter section of the Tax Code provides that no suit may be maintained for the recovery of any internal revenue tax until a claim for a refund has been duly filed with the IRS. The former section prohibits the courts from entertaining any refund suit filed before the expiration of six months from the date the claim for refund is filed, unless the Secretary renders a decision on the claim within that time. Any refund suit instituted prior to the filing of a claim for refund, or after the claim has been filed but prior to the time specified by section 6532, is outside the scope of the Government's consent to be sued and is barred by sovereign immunity. See, e.g., United States v. Freedman, 444 F.2d 1387, 1388 (9th Cir.), cert. denied, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971).
 
 
 31
 The district court held that "this is not a tax refund suit" and that "sovereign immunity is waived under 5 U.S.C. Sec. 702." Sorenson, 557 F.Supp. at 733. Petitioner, however, has recharacterized the relief she seeks. She now concedes that her individual action is a tax refund suit, and she no longer seeks an order requiring the Secretary to release funds to the class. She further concedes that section 702 does not apply because it provides for a waiver of sovereign immunity only in actions seeking relief other than money damages. Since the district court did not regard the present action as a tax refund suit, it did not rule on whether sovereign immunity would bar such a suit. Because we hold that Sorenson's individual action is a tax refund suit, we must reach the question of sovereign immunity.
 
 
 32
 With respect to the requirement of section 7422(a) that a claim for a refund or credit be filed with the IRS, tax regulations provide that "[a] properly executed ... income tax return (on 1040X ...) ... shall constitute a claim for refund or credit...." 26 C.F.R. Sec. 301.6402-3(a)(5). Sorenson filed such a return in February of 1982. Further, on April 14, 1982, her counsel mailed a letter to the IRS that reiterated her claim that she was entitled to a refund and credit. Since even "an informal claim which fairly gives notice of a taxpayer's intention to press for a refund of taxes is sufficient to satisfy the statutory requirement," Standard Lime and Cement Co. v. United States, 329 F.2d 939, 943, 165 Ct.Cl. 180 (1964); Rosengarten v. United States, 181 F.Supp. 275 (Ct.Cl.), cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960), the letter, as well as the filing of Form 1040X, satisfied the claim requirement of section 7422(a).
 
 
 33
 The provision of section 6532 that a taxpayer may not file a refund action in the courts "before the expiration of 6 months from the date of filing the claim ... unless the Secretary ... renders a decision thereon within that time ...," 26 U.S.C. Sec. 6532(a)(1), presents a more difficult question. Sorenson's uncontroverted complaint alleges that on April 12, 1982, an IRS representative told her that her refund and credit were being held to satisfy the State of Washington's claim against her husband. Further, on April 22, 1982, the same day that Sorenson filed her complaint in this suit, the Secretary sent her notice that "we have kept all or part of your overpayment" and that the "amount we kept has been paid to the State of Washington." Sorenson contends that either of these communications constituted adequate evidence that the Secretary had rendered an adverse decision on her claim and that she was thereafter entitled to file suit for a refund. The IRS argues that these exchanges do not constitute notice, that the Secretary had not rendered a decision by April 22, 1982, and that a formal notice of disallowance was not sent to petitioner until June 28, 1982, over two months after she filed suit.
 
 Section 6532(a)(1) provides:
 
 34
 No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary or his delegate renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.
 
 
 35
 The first portion of the statute sets forth a time before which a suit cannot be filed and the latter portion a time after which a suit cannot be filed. It is obvious that there are different policy considerations for each requirement. The first portion of section 6532 establishes a six-month period as a reasonable time for the IRS to consider the claim before suit is filed, so that those claims it considers to have merit can be resolved administratively, thereby avoiding needless litigation. However, under the provisions of this section, a suit is not precluded if the IRS renders a decision on the claim within that period. The section does not say that suit is precluded until notice of that decision is given to the taxpayer. Rather, it is the time of the decision that is controlling. This is perfectly logical, in that the purpose of this portion of the statute is served if no suit is filed before the Secretary has made his decision or the six months' reasonable time for doing so has expired. Notice to the taxpayer has no bearing on the policy reasons for this portion of the statute.
 
 
 36
 The remainder of section 6532 provides for a period of limitations within which the taxpayer must bring his suit. In order for this time period to commence, the latter portion of the statute provides that the Secretary must mail a notice of the decision by certified or registered mail. It is obvious that basic fairness to the taxpayer requires that he be notified of the time from which his two-year limitations period commences to run.
 
 
 37
 In the present case, the IRS letter of April 22 to Sorenson stated that all or part of her refund had been withheld and transferred to the State of Washington. This constituted a decision on the claim, which permitted her to file suit to recover the amount withheld and transferred to the State.
 
 CLASS CERTIFICATION
 
 38
 Pursuant to Fed.R.Civ.P. 23(b)(2), the district court certified a class consisting of
 
 
 39
 all residents of the State of Washington (1) who have filed joint Federal income tax returns for 1981; (2) whose spouses owe money to the State of Washington for child support; and (3) who were entitled to a refund of taxes withheld, not exclusively from their spouses' earnings, or to an earned income credit, all or part of which has been withheld by the Internal Revenue Service under the authority of 26 U.S.C. Sec. 6402 or 42 U.S.C. Sec. 664.
 
 
 40
 557 F.Supp. at 733. The court ruled that the requirements of Rule 23(a) had been met and that class-wide declaratory and injunctive relief would be appropriate. Id. The Secretary argues that such a class cannot be certified because it is impossible to determine which of the class members, if any, have met the procedural requirements for the maintenance of a tax refund suit. Sovereign immunity would bar refund actions by any class members who had not met the requirements. Sorenson, however, no longer seeks a class-wide refund. The only relief she seeks on behalf of the class is declaratory and injunctive. All class members are entitled to seek such relief because, pursuant to 5 U.S.C. Sec. 702, sovereign immunity is waived with respect to declaratory and injunctive relief. Whether class members individually have met the procedural requirements for a refund action is therefore irrelevant, and certification of the class was proper.
 
 SORENSON'S APPEAL
 
 41
 Sorenson sought a declaratory judgment on behalf of herself and the class declaring that "earned income credits" authorized by 26 U.S.C. Sec. 43 are not within the purview of 42 U.S.C. Sec. 664(a) (1982) and 26 U.S.C. Sec. 6402(c) (1982) and are, therefore, not subject to retention by the Secretary and transfer to the states as reimbursement for public assistance payments. Sorenson also sought refund of the remaining one-half of the earned income credit withheld in her case. The district court held for the Secretary. We affirm.
 
 
 42
 A discussion of the related and underlying code sections is necessary in order to place in perspective the legislation here in question.
 
 Statutory Background
 
 43
 The Social Security Act requires that, as a condition of eligibility to receive aid to families with dependent children, the applicant or recipient must assign to the state any rights to support from any other person which have accrued at that time. See 42 U.S.C. Sec. 602(a)(26) (1982). Congress enacted the Social Services Amendments of 1974, which amended the Social Security Act and the Internal Revenue Code so as to provide a mechanism to assist the state in collecting these support obligations. Under this statute, the state can certify the amount of a child support obligation that has been assigned to the state and the Secretary of the Treasury will then proceed to assess and collect the obligation for the state in the same manner (with some exceptions) as federal taxes. Social Services Amendments, Pub.L. No. 93-647 Secs. 452(b) and 101(b)(1) (1975), 88 Stat. 2337, 2352 and 2358 (42 U.S.C. Sec. 652(b) and 26 U.S.C. Sec. 6305). This procedure does not, however, authorize the Secretary to withhold and transfer to the state any funds held as refunds of federal taxes paid and due to the parent owing the child support. In order to remedy this deficiency, Congress enacted additional amendments to the Social Security Act and the Internal Revenue Code as a part of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97-35, 95 Stat. 357, 860-63 (1981). These amendments, which establish such a procedure, are the statutes here in issue. Section 2331(a) of OBRA amended the Social Security Act by adding a new section, 464(a), codified as 42 U.S.C. Sec. 664. Section 2331(c) amended the Internal Revenue Code by amending 26 U.S.C. Sec. 6402(a) and adding a new section, 26 U.S.C. Sec. 6402(c). The specific provisions of these sections of OBRA are:
 
 
 44
 Sec. 464. (a) Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 402(a)(26), the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such funds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 457(b)(3). (Emphasis added.)
 
 
 45
 Sec. 464(c) Section 6402 of the Internal Revenue Code of 1954 is amended--
 
 
 46
 (1) by striking out in subsection (a) thereof "shall refund" and inserting in lieu thereof "shall, subject to subsection (c), refunds"; and
 
 
 47
 (2) by adding at the end thereof the following new subsection: "(c) OFFSET OF PAST-DUE SUPPORT AGAINST OVERPAYMENTS.--The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax." (Emphasis added.)
 
 
 48
 Sorenson argues that these amendments do not authorize the retention and transfer of amounts held as an "earned income credit" because an earned income credit is in the nature of a grant of funds to the recipient through the refund mechanism of the Internal Revenue Code but is not a "refund of Federal taxes paid," specified in section 2331(a), or an "overpayment to be refunded to the person making the overpayment," specified in section 2331(c).
 
 
 49
 Looking first at the wording of section 2331(a), it is important to note that it does not provide, as Sorenson contends, that only tax refunds being held by the Secretary can be retained and transferred. Rather, section 2331(a) provides that "any" amounts payable "as " refunds of federal taxes paid may be retained and transferred. This language does include the earned income credit because it is payable "as a refund of Federal taxes paid." The mechanism used for the refund of Federal taxes paid is the method by which the earned income credit is paid. This language of section 2331(a) supports the construction urged by the Secretary, not by Sorenson.
 
 
 50
 We next turn to the construction of section 2331(c). The language of this section is best understood when placed in the context of the pertinent Internal Revenue Code provisions, 26 U.S.C. Secs. 6401 and 6402, which provide in relevant part:
 
 Sec. 6401 Amounts treated as overpayments
 
 51
 .............................................................
 
 
 52
 ...................
 
 
 53
 * * *
 
 
 54
 (b) Excessive credits.--If the amount allowable as credits under sections 31 (relating to tax withheld on wages) and 39 (relating to certain uses of gasoline, special fuels, and lubricating oil), and 43 (relating to earned income credit) exceeds the tax imposed by subtitle A (reduced by the credits allowable under subpart A of part IV of subchapter A of chapter 1, other than the credits allowable under sections 31, 39, and 43), the amount of such excess shall be considered an overpayment....
 
 
 55
 (c) Rule where no tax liability.--An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.
 
 
 56
 Sec. 6402. Authority to make credits or refunds
 
 
 57
 (a) General rule.--In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of any internal revenue tax on the part of the person who made the overpayment and shall, subject to subsection (c), refund any balance to such person.
 
 
 58
 (b) Credits against estimated tax.--The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.
 
 
 59
 (c) Offset of past-due support against overpayments.--The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax. (Emphasis added.)
 
 
 60
 Section 6401(b) defines an overpayment and clearly classifies an "earned income credit" as an "overpayment." Section 6402 authorizes the Secretary to dispose of the overpayment. He can, under section 6402(a), credit it against any liability for internal revenue taxes due the federal government on the part of the person who made the overpayment and must refund the balance to that person who made the overpayment unless it is retained for past due support under subsection (c). It is important to note that the only person to whom the Secretary is authorized to refund an overpayment is "the person who made the overpayment."
 
 
 61
 Section 6402(c) provides that the amount of "any overpayment to be refunded to the person making the overpayment" shall be reduced by the amount of any past-due support owed, which is then remitted to the state. Sorenson contends that although the earned income credit is an "overpayment," it is only the type of overpayment that is "to be refunded to the person making the overpayment" that can be retained and transferred. This interpretation of the language does not comport with the remainder of the provisions of sections 6401 and 6402. This language in section 6402(c) is the same language used in section 6402(a). If we were to apply Sorenson's construction of the language to section 6402(a), the earned income credit would never be payable at all because no one ever technically made an overpayment. Obviously the person who is entitled to the payment in either section 6402(a) or (c) is the person considered to have made the overpayment. The reason for the awkwardness of the overpayment language is that a credit really is not an "overpayment," as the term is used in normal usage but, for the purposes of this statutory method of distribution, it is defined as an overpayment and treated as a refund of taxes that have been overpaid. Similarly, the person who receives any credit enumerated in section 6401(b) has not really overpaid it; yet, he or she is the person who is entitled to receive it and is thus considered to be the person who paid it.
 
 
 62
 It is significant to note that rather than providing any exclusionary language for the earned income credit, Congress provided in the statutory section amending the Social Security Act that the interception applied to "any" amounts payable as tax refunds, OBRA Sec. 2331(a). Furthermore, in the section of the statute amending the Internal Revenue Code, Congress provided that the interception applied to "any" overpayments, OBRA Sec. 2331(c).
 
 
 63
 It is also significant that an employee can elect to receive the earned income credit from his employer during the course of the year as a negative withholding. See 26 U.S.C. Sec. 3507 (1982). Thus, if the employee does not claim it in this fashion, it could be viewed that he has "overpaid" it, in the same sense that in not claiming all his exemptions he has "overpaid" his withholding tax. Technically, in either case, it is the employer, not the employee, who has made the overpayment to the IRS. Obviously, no one contends that it is the employer who has made the overpayment.
 
 
 64
 Sorenson argues that the earned income credit should be treated differently because it was really designed by Congress as a grant to assist needy families, and that Congress did not intend that the intercept program apply to such a grant.[1] The first problem we have with this argument is that Congress easily could have expressly exempted the earned income credit and did not do so. Secondly, Congress specifically provided in the statute that the intercept program applied to "any" amounts payable through the federal tax refund process. In the face of this rather clear statutory mandate, we conclude that we are not free to speculate that Congress intended otherwise.
 
 
 65
 We are aware that the published opinions of several courts have reached conflicting conclusions on this issue. See Rucker v. United States, 751 F.2d 351 (10th Cir., 1984) (earned income credit could not be intercepted); Nelson v. Regan, 731 F.2d 105 (2d Cir.) cert. denied, --- U.S. ----, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984) (earned income credit could not be intercepted); Coughlin v. Regan, 584 F.Supp. 697 (D.Maine 1984) (earned income credit could be intercepted); Sorenson v. Secretary of the Treasury of the United States, 557 F.Supp. 729 (D.Wash.1982) (earned income credit could be intercepted). We believe that the Nelson and Rucker opinions have misinterpreted the statute by overlooking the fact that the statute provides that the Secretary can intercept not only tax refunds, but any amounts payable as tax refunds. Furthermore, we believe these opinions overlook the context in which the implementing amendment to the Internal Revenue Code fits, and that the same "overpayment" language is used in the amendment as is used in the section providing for refunds of any withholding taxes or credits to the taxpayer.
 
 
 66
 In summary, sections 651-675 of the Social Security Act provide for a comprehensive program to collect past-due child support. The Act passed in 1975 provided that the assessment process used for collecting income taxes could be used to collect the past-due child support. OBRA enhanced the collection power by permitting the Secretary to intercept any amounts payable as refunds of federal taxes paid. Nothing in the language of section 2331 of OBRA, which amended the Social Security Act, exempted or referred to the earned income credit. The portion of OBRA that provided the mechanism for intercepting these funds, section 6402(c) of the Internal Revenue Code, merely used the same terminology, "any overpayment to be refunded to the person making the overpayment," as is used in the other subsections in authorizing the refund of withholding taxes, earned income credits, and other credits to the person entitled to receive them. There is nothing in the language of OBRA or the legislative history of the earned income credit which would indicate that Congress intended that the earned income credit be treated differently than other funds that are classified as "overpayments" and paid as a tax refund.
 
 
 67
 The judgment of the district court on both the Secretary's cross appeal and Sorenson's appeal is AFFIRMED.
 
 
 
 *
 The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Actually, it appears from the legislative history that although the earned income credit provides some assistance to needy families, it was not designed as a type of welfare grant, but as a work incentive program, by negating the disincentive of Social Security taxes. Social Security taxes apply to earnings received through wages or salaries, whereas they do not apply to funds received through other sources, such as social welfare programs. The purpose of the legislation was to remove the disincentive to work provided by the Social Security taxes that would have to be paid on wages or salaries. See S.Rep. No. 36, 94th Cong., 1st Sess. 12, reprinted in 1975 U.S.Code Cong. & Ad.News, 54, 63-64, 83-84. It is also obvious from the manner in which the earned income credit operates that it was not a type of welfare grant. The wage earner is entitled to receive an income credit of ten percent of his or her earnings up to $5,000. Thus, a person who earns $5,000 would receive a $500 credit, whereas a person who earns $1,000, and would probably be in greater need, would receive only a $100 credit. The funds that the Secretary would be reaching are in reality more akin to a refund of Social Security taxes than to a type of welfare grant
 From a policy standpoint, it is also worth noting that these funds that the Secretary would be reaching are a lump sum, accumulated through the year, which the taxpayer could have received through his employer under 26 U.S.C. Sec. 3507. This is quite similar to excess withholding taxes that the taxpayer has allowed to accumulate, which clearly can be intercepted. The policy considerations are quite different in intercepting such accumulated year-end funds from the policy considerations in the garnishing of weekly wages that the employee is expecting to receive for current living expenses. In this latter instance, Congress has specifically provided for exemptions of certain amounts of wages and salaries from the assessment and collection process. See 26 U.S.C. Secs. 6305(a) and 6334(d).