[No. 38924-6-I.   Division One.   September 8, 1997.]

SHIRLENE B. FOX, *Respondent*, v. S. ROSS FOX, JR., *Appellant.*

*James R. Tomlinson* and *Davies Pearson, P.C.*, for appellant.

*Lisa A. Wolfard* and *Short, Cressman & Burgess*, for respondent.

ELLINGTON, J. — After selling his medical practice, S. Ross Fox petitioned for modification of his maintenance obligation to his former wife, Shirlene Fox, on the ground of a substantial change of circumstances. We affirm the trial court's denial of the petition because the record does not demonstrate the showing of good faith necessary to allow Ross' voluntary reduction of income to serve as a basis for finding a change of circumstances.

## FACTS

Shirlene and S. Ross Fox were divorced in 1988 after 37 years of marriage. According to the property settlement agreement, Ross, a surgeon, earned $267,289 in 1987. Shirlene, who is disabled, was unemployed and had no employable skills. Under the agreement, Ross was to pay Shirlene maintenance in the amount of $4,708 per month, to be reduced to $4,000 per month upon satisfaction of certain financial obligations.

From 1989 through 1994, Ross' annual income from his medical practice averaged approximately $261,000. In 1995, he sold the practice to Medical Services Organization, L.L.C. (MSO) for $269,012. MSO is a Utah limited liability company. Kathy Fox, whom Ross married in 1992, is its registered agent in Washington.[1] After the sale, Ross became an employee of MSO and agreed to work three

---

[1]MSO's managing member, Dennis Evanson, is also the managing member of Cottonwood Financial Services, the company from whom Ross and Kathy borrowed $30,000, allegedly to meet Ross' maintenance obligation after he sold his practice.

days a week at an annual salary of $103,000. Effective August 1, 1996, he reduced his hours to two and a half days a week and his annual salary to $70,000. MSO hired Kathy Fox as office manager of the practice at an annual salary of $127,000.

In September, 1995, Ross filed a petition for modification of his maintenance obligation on the ground that he was no longer financially able to meet the obligation. The trial court found that there had not been a substantial change in circumstances to warrant a reduction in the maintenance obligation. In so concluding, the court determined that Kathy Fox's economic condition was relevant to the determination of Ross' ability to meet his maintenance obligation as well as his other monthly expenses. The court also concluded that Ross' retirement was within the contemplation of the parties at the time of the dissolution action and was not a basis upon which to find a substantial change of circumstances.

## DISCUSSION

A decree respecting maintenance may be modified only upon a showing of a substantial change of circumstances. RCW 26.09.170(1)(b). The phrase "change of circumstances" refers to the financial ability of the obligor to pay vis-a-vis the needs of the recipient. *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292, *review denied*, 108 Wn.2d 1027 (1987). The determination of whether a substantial change of circumstances justifying modification has occurred is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Lambert v. Lambert*, 66 Wn.2d 503, 508, 403 P.2d 664 (1965); *In re Marriage of Ochsner*, 47 Wn. App. at 524-25. Where there is no substantial showing of good faith, a voluntary reduction of income does not constitute such a change of circumstances as to warrant modification of a maintenance obligation. *Lambert*, 66 Wn.2d at 510; *Carstens v. Carstens*, 10 Wn. App. 964, 967-68, 521 P.2d 241 (1974); *see also In re Marriage of Blicken-*

*staff*, 71 Wn. App. 489, 493, 859 P.2d 646 (1993) (applying same principle to modification of a child support order).

Ross argues that his voluntary reduction of income was in good faith since he had reached the age of 66 and was justified in cutting back his work load and preparing for retirement. We find, however, that when the circumstances surrounding the sale of the practice are viewed in their entirety, the record does not show the requisite good faith necessary to permit the modification.

In determining whether good faith exists under these circumstances, it is not appropriate to limit the focus of inquiry solely to Ross' individual income. Rather, we agree with the trial court that Kathy Fox's income as MSO's office manager cannot be ignored. While Kathy's income cannot be imputed to Ross,[2] it is appropriate to consider it in determining whether a substantial change in Ross' circumstances has occurred. In *In re Montell*, 54 Wn. App. 708, 715-16 n.3, 775 P.2d 976 (1989), the court stated that the income of a nonobligated spouse is not entirely immaterial and may be considered in determining the economic condition of the obligated spouse as it pertains to the latter's ability to support his or her children. We see no reason why the same principle should not be applied to the determination of the economic condition of a spouse in relation to his or her ability to pay maintenance. Indeed, the facts presented here illustrate the need for such a rule.

The sale of the medical practice cannot be described as an arm's length negotiation. Ross did not actively market the practice, MSO was the only entity he dealt with, and MSO is comprised in part of Ross' wife, Kathy, who is MSO's registered agent in Washington. At the same time Ross became an employee of MSO at a reduced salary, his wife Kathy was hired as office manager of the practice at a very substantial salary, the size of which has been

---

[2]*See Van Dyke v. Thompson*, 95 Wn.2d 726, 733, 630 P.2d 420 (1981) (child support obligation).

unexplained.[3] Ross' salary was reduced by more than would be justified by the proportional reduction in his time commitment. Together, their incomes approximate Ross' pre-sale income. The source of Ross' total household income is the same as the source of his presale income—his medical practice. Ross has thus suffered no significant reduction of the income to which he has access, and enjoys the same lifestyle as he did prior to the sale.

By contrast, while Ross' household income remains stable and his lifestyle unchanged, Shirlene's situation is worsening. She continues to be unemployable due to her multiple sclerosis, which is increasingly debilitating. Although her monthly income has increased by $484 since she began receiving Social Security benefits, the expenses due to her illness increase steadily. For example, she anticipates having to remodel parts of her house to accommodate her disability, and to hire live-in help as her condition worsens. Thus, any increase in Shirlene's income will be offset by her increasing living and health care costs.

Under the circumstances, it was reasonable for the trial court to conclude that Ross' reduction in individual income was part of a plan designed to create the appearance of a worsened financial condition, while at the same time ensuring that his household income and lifestyle remained unchanged. This is not a reduction taken in good faith and cannot serve as a basis for modifying Ross' maintenance obligation.[4]

The decision of the trial court is affirmed. Shirlene has requested attorney fees on appeal pursuant to RCW

---

[3]Dennis Evanson claims Kathy's salary is justified because she has medical administration experience and is not just managing Ross' practice but will manage others MSO intends to acquire, and will become MSO's "central administrator." As of the date of oral argument, MSO had apparently not acquired any other practices.

[4]Because we so hold, we need not, and do not, address the issue of whether Ross' retirement was within the contemplation of the parties at the time of dissolution. Additionally, we note that our opinion should not be construed as precluding Ross from ever obtaining a modification of his maintenance obligation upon a showing of a substantial change in circumstances resulting from a good faith, voluntary reduction in income.

26.09.140 and RAP 18.1 and has filed the requisite financial affidavit. We grant her request and award her attorney fees on appeal. She is directed to comply with RAP 18.1(d).

KENNEDY, A.C.J., and WEBSTER, J., concur.