IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>SCOTT LEE GRIEBEN,<br><br>            Respondent,<br><br>  and<br><br>SHAWNA SUZANNE AUSTIN,<br><br>            Appellant. | No. 83435-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. —  Shawna Austin filed a motion to modify spousal maintenance arguing that there had been a substantial change of circumstances to warrant increasing maintenance for two reasons—first, that her health had worsened, and second, Scott Grieben's income had substantially increased.  The commissioner dismissed the motion, Austin moved to revise, and the trial court denied that motion.  Because Austin failed to establish a substantial change of circumstances that were not previously contemplated by the parties at the time the decree was entered, we affirm.

FACTS

Grieben and Austin married in 1991 and separated in 2013, the same year

Citations and pin cites are based on the Westlaw online version of the cited material

Grieben filed a petition for dissolution of marriage.[1]  Throughout the duration of the marriage, Austin acted as a stay-at-home parent.  Grieben generated income from the businesses he co-owned with a business partner, Tri-Tec Communications, Inc., ("TTC"), and Tri-Tec Networks LLC ("TTN").  TTC is a company that sells and installs large phone systems for business and government agencies.  In the three years prior to the parties' dissolution, Grieben's average annual income was $598,244.[2]  To support her request for maintenance, Austin provided a vocational evaluation from September 2014 that discussed personal factors affecting Austin's potential future employment.  The evaluator concluded that Austin, who was 52 at the time, had not worked in over 21 years and would need retraining to be competitively employable in any suitable occupation.

The evaluation provided an overview of Austin's many chronic and long-term medical conditions and how they impacted her ability to work.  Austin was diagnosed with an autoimmune disease such that her rheumatologist advised her not to sit too long so that blood clots would not develop and cause a mini stroke, which she had a history of due to the condition.  She also had hearing loss in both ears and a related surgery caused inner ear damage resulting in severe balance issues.  Because of this condition, she was provided with a disabled parking permit, and the evaluator opined that "appropriate employment

---

[1] Scott and Shawna have two children together, and at the time of the dissolution, one child was 17 and one was a college student.  Financial support for the children is not at issue.

[2] Grieben's annual income was $782,711 in 2012, $416,510 in 2013, and $595,510 in 2014.

environments should limit walking and standing on uneven ground or for prolonged periods of time."

Austin also had chronic visual migraines. She sustained about 10-15 ocular migraines a year over the previous 40 years ranging in duration from 24 hours to a few days, possibly requiring a few days of bedrest. Additionally, since 1989, Austin was diagnosed with Bipolar II, which is a manic/depressive disorder, coupled with an anxiety disorder with panic attacks and social phobia features. The evaluator explained that as the anxiety attacked could be profound and debilitating, a person with such a disorder may do best in a work environment that does not require a high degree of social interactions—such as group presentations, teaching, sales representation, or interaction with the media. Two years prior to the evaluation, Austin was reporting symptoms of Attention Deficit Disorder and was taking medication to relieve some of the symptoms. Even on medication, she still had trouble reading and focusing on content.

Austin also was reported to have bilateral Carpal Tunnel Syndrome, severe in her right dominate hand and moderate in her left hand, and she also had issues with chronic left shoulder tendonitis. Finally, the evaluation discussed her advanced degenerative disc disease in her cervical and lumbar spine and disc bulge in her lumbar spine. As a result, the evaluation suggested that Austin not enter into an occupation that is highly repetitive in nature or that required her to lift more than 10 pounds.

Though Austin was at the time qualified for entry level, low skill or unskilled occupations, the evaluator advised that these positions required people

3

to be on their feet moving about all day and that would not be appropriate for Austin given her balance issues as well as her low back issues.

The evaluator focused on shorter training programs given Austin's age of 52 because longer school programs may not be worth the time and money "given the short time she would be working before retirement age" and the fact she "would be at a serious disadvantage to obtain employment based on her expected age of 57-58 once school is completed." However, even shorter programs for occupations with labor markets that are either balanced or in demand in King County identified by the evaluator still raised concerns.[3] All the occupations involved computer keyboard use and that Austin may have difficulty in a job that requires high levels of repetitive hand use, awkward postures, and forceful pinching.

At minimum, Austin would need to upgrade her office skills to obtain an entry level position and would require training to be able to work in physically appropriate work. However, the evaluator acknowledged Austin's "number of medical conditions that limits the types of training and work she can perform." The evaluator noted that "Austin may require time off work, above and beyond the normal time off for medical issues associated with her Bipolar II disorder, anxiety/panic disorder and migraines. These also could interrupt training and therefore, it is expected she will require more time than usual to meet the requirements of training."

---

[3] The evaluator identified five occupations with projected growth for consideration with the estimated salaries ranging from $29,965.58 to $56,686.75: receptionist, general office clerk, executive secretary, human resource assistant, or social service aid.

4

The evaluator wrote,

In addition, it will be important that Ms. Austin be employed by an employer who employs over 50 employees as they are required by law to provided[sic] Family Medical Leave. Ms. Austin may need to use this benefit for various medical issues that impact her ability to work, as an avenue to maintain her employment. A smaller employer may not be able to afford the extra time off from work and she could risk losing her job in such a situation.

After a day-long mediation, the trial court entered agreed final dissolution orders in December 2014. Though the parties dispute the valuation of the divided assets, those orders were not appealed. Even assuming Austin's description is correct, she was awarded more than one million dollars. Additionally, the court ordered the following spousal maintenance:

The husband shall pay to the wife the sum of $8,300 per month in spousal maintenance, beginning with the month of December 2014. Maintenance shall continue through November 2019. From December 2019 through November 2020, spousal maintenance shall be $6,300 per month. For December 2020 through November 2021, maintenance shall be $4,300 per month. Maintenance shall terminate with the final payment in November 2021. Maintenance shall terminate on the death of either party (except as stated below) or the remarriage of the wife.

As additional spousal maintenance, husband shall pay the sum of $3,700 per month beginning in December 2014. This maintenance payment shall continue through November 2020, or until a total of $374,000 has been paid to the wife. This maintenance payment shall terminate on the death of either party except that this particular obligation shall constitute a lien on the husband's estate in the event of his death prior to termination of this obligation. This specific maintenance payment shall survive the wife's remarriage.

The court ordered maintenance for the following reasons:

the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life and other attendant circumstances;

5

the duration of the marriage;

the ability of the spouse from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse seeking maintenance;

the age, physical and emotional condition and financial obligations of the party seeking maintenance;

the past, present and future earning or economic capacity of each party, including the earning or economic capacity of each spouse that was enhanced, diminished or foregone during the marriage; and

the standard of living each spouse will experience after dissolution of the marriage.

The petitioner has the ability to pay maintenance as follows: He has a substantial income from Tri-Tec Communications, Inc.

On July 31, 2020, Austin filed a petition to modify spousal maintenance. She included a declaration of her primary physician, her own declaration, and multiple pages of medical records and financial documents. She claimed that there had been two substantial changes of circumstances to warrant the modification.

The first substantial change she alleged was that her medical conditions contemplated in the 2014 dissolution order had worsened considerably. In addition, she claimed that new health problems arose. Her new health conditions included myocardial infarction (death of heart muscle due to lack of oxygen), fainting and falling spells, fibromyalgia (a musculoskeletal pain disorder), essential tremor (a neurological disorder with effects resembling Parkinson's disease), essential myoclonus (involuntary muscle jerking), acute kidney injury, and cataracts. She stated that she suffered from three falls, resulting in two

black eyes and her rotator cuff being ripped from her bone.

Although it is unclear when she started, Austin declared that she had lost "recently, until late 2019" her job working part-time selling windows, earning $15.00 per hour. Austin claims that when she wrote her employer saying she was having challenges with various health issues, the employer responded by saying it was best to put her employment on pause so that she could take the time needed to recover.[4] Austin alleges she cannot work at all. She submitted a letter from her primary care doctor who declared that many of Austin's underlying conditions had arisen or worsened within the past two to three years and that she has "multiple chronic medical issues, a few of which I list below, which render her unable to hold down regular employment."[5] She stated that she did not qualify for Social Security Disability Insurance because she had not worked meaningfully outside the home since 1994. She also explained that she did not qualify for Supplemental Security Income because of her assets.

The second substantial change Austin alleged was the increase in Grieben's finances. According to Austin, "[t]he Court should take [Grieben's] 2013 income of $416,000 as the baseline. His 2019 income of $537,701 represents a $115,701 annual increase. . . ." Austin also alleged that Grieben's net worth was 79 percent higher than her net worth. Austin, considering Grieben's financial position as opposed to her own, argued that Grieben

---

[4] The only documentation of this conversation between Austin and her employer is Austin's summary of it in an email to her attorney that she included as an exhibit to her declaration. The actual emails to and from her employer were not in the record.

[5] The list includes health issues discussed in the 2014 vocational evaluation as well as health issues such as "tremor," which she identified as having since 2018.

"therefore received more than *four times* what [Austin] received over the last five years from work income that was only made possible from the work and sacrifice both parties contributed to the marital community over the 22 years the parties were married." She asked the court to therefore equalize their incomes.

Grieben responded by filing a motion to dismiss. Grieben argued that Austin's medical conditions were contemplated at the time of the dissolution and, thus, there was no substantial change warranting modification of spousal maintenance. He also argued that there was no substantial change to his finances stating that his average annual income from 2012-2014 was $598,244, but his average annual income from 2017-2019 was $457,302, which was a substantial decline.[6]

Austin filed a response and contended that she should receive a lifetime spousal maintenance award.

A commissioner heard and granted Grieben's motion to dismiss. In September 2020, Austin filed a motion for revision of the commissioner's ruling. After hearing argument and considering all of the documents provided, the court first addressed the assertion that Grieben's income increased to a degree that would have risen to the level of a substantial change in circumstances. The court noted that the findings entered in December 2014 specifically indicated that Grieben had a substantial income from TTC and that was how he would be able

---

[6] He further stated that his own health had deteriorated as a brain tumor survivor, and he had recently been diagnosed with prostate cancer and would be undergoing cryotherapy treatment. On appeal, he does not rely on his health issues as a basis to deny the motion for modification.

to afford to pay the significant and substantial spousal maintenance that was awarded to Austin. The court considered his income from 2015-2019 and determined "[h]is income has not increased to any degree that would be considered a substantial change in circumstances, and in fact it does not appear that it has increased really one way or another." The court reasoned that the parties knew at the time they agreed to the dissolution decree that Grieben's income fluctuated year to year. In light of the foregoing, the court found that there was not a substantial change of circumstances as it related to Grieben's income, and it would not be a basis to grant or allow a modification of spousal maintenance.

The court then addressed whether there was a substantial change as to the financial needs of Austin due to her health conditions. The court noted that Austin was awarded a significant amount of assets and spousal maintenance and was not working at the time of dissolution. She had significant health conditions at the time the parties separated and dissolved their marriage, and the assertion that the parties did not contemplate her conditions could worsen was unrealistic, especially considering that some of her conditions were chronic or conditions she dealt with for a significant period of time. The court stated that it was not clear if the parties anticipated she was going to secure full-time employment where she was going to be able to support herself in the lifestyle she had become accustomed to. The court posited that the parties contemplated she might choose to work to supplement her income, but she would be able to live off of the assets provided from the dissolution. The court acknowledged that

9

she had sold some of her assets, but she still had a large amount remaining. It stated, "The fact that you sell one asset that might be producing income to have an asset that doesn't produce income is not a substantial change. That is a choice." The court found that there had not been a substantial change in circumstances regarding her financial need, and it denied the motion to revise the commissioner's ruling.

Austin appeals the court's denial of the motion to revise the commissioner's ruling.

## DISCUSSION

On appeal, this court reviews the superior court's ruling on a motion to revise, not the commissioner's ruling. In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009); RCW 2.24.050. This court reviews the trial court's decision concerning modification of the dissolution decree for abuse of discretion. In re Marriage of Shellenberger, 80 Wn. App. 71, 80, 906 P.2d 968 (1995). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "In determining whether the trial court abused its discretion in ordering modification, this court reviews the order 'for substantial supporting evidence and for legal error.'" In re Marriage of Drlik, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004) (quoting Spreen v. Spreen, 107 Wn. App. 341, 346, 28 P.3d 769 (2001)).

### Legal Standard

Austin contends that the trial court applied the wrong legal standard to

Austin's modification petition. We disagree.

A trial court abuses its discretion when it "'applies the wrong legal standard,' or bases its ruling on an erroneous view of the law." Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006) (citing Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). The correct legal standard is a matter that the appellate courts decide de novo, in addition to the statutory interpretation of the statutory provisions in RCW 26.09. Gildon, 158 Wn.2d at 494; Drlik, 121 Wn. App. at 276.

A decree involving spousal maintenance may only be modified upon a showing of a substantial change of circumstances not within the contemplation of the parties at the time the decree was entered. Wagner v. Wagner, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980); RCW 26.09.170(1)(b). The phrase "change of circumstances" refers to the financial ability of the obligor to pay vis-a-vis the needs of the recipient. Fox v. Fox, 87 Wn. App. 782, 784, 942 P.2d 1084 (1997) (citing In re Marriage of Ochsner, 47 Wn. App. 520, 524-25, 736 P.2d 292 (1987)). The determination of whether a substantial change of circumstances justifying modification has occurred is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Id. (citing Lambert v. Lambert, 66 Wn.2d 503, 508, 403 P.2d 664 (1965); In re Marriage of Ochsner, 47 Wn. App. at 524-25, 736 P.2d 292 (1987).

The trial court noted that "This is not an initial award of spousal maintenance. This is a Petition to Modify what was set forth in a final decree, and the decree and findings were entered on December 9, 2014 by agreement of

11

the parties." The court then acknowledged that it had

> to determine whether or not there has been a substantial change of circumstances under the requirements for spousal maintenance to determine whether or not the case would go on. . . . A substantial change of circumstance for the purposes of spousal maintenance must be one that was not contemplated by the parties at the time that the order was entered, and it must be – the change must be either in the financial needs of the recipient or the financial ability of the obligor, and any change has to be one that is continuing and not something that is a shorter transitory change.

Austin argues that the trial court applied the wrong legal standard because it failed to consider factors in RCW 26.09.090 in conjunction with RCW 26.09.170. She cites no authority supporting the assertion that a trial court, when finding that the party seeking modification has not established a substantial change in circumstances, must nevertheless address factors in RCW 26.09.090.

Except as otherwise provided in RCW 26.09.070(7), provisions of any decree respecting maintenance may be modified only upon a showing of a substantial change of circumstances. RCW 26.09.170(1). RCW 26.09.090 provides that in a proceeding for dissolution of marriage, or in a proceeding for maintenance following dissolution of marriage, the court may grant a maintenance order and that order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:

> (1) In a proceeding for dissolution of marriage or domestic partnership, legal separation, declaration of invalidity, or in a proceeding for maintenance following dissolution of the marriage or domestic partnership by a court which lacked personal jurisdiction over the absent spouse or absent domestic partner, the court may grant a maintenance order for either spouse or either domestic partner. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to

12

misconduct, after considering all relevant factors including but not limited to:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage or domestic partnership;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

However, the trial court need not consider these factors in deciding whether or not to modify spousal maintenance—it only needs to consider these factors if it decides that substantial change warrants modification. See Fox, 87 Wn. App. at 784; Spreen, 107 Wn. App. at 347. In Fox, the court did not reach the RCW 26.09.090 factors because it did not find substantial change of circumstances warranting modification under RCW 26.09.170; Fox, 87 Wn. App. at 784. In Spreen, the court only reached the RCW 26.09.090 factors after it decided there was a substantial change of circumstances warranting modification under RCW 26.09.170; Spreen, 107 Wn. App. at 347. The court in Spreen added that "once the court finds the changed circumstances warrant a modification, the issues of amount and duration are the same as in the original dissolution." Id. at 347 n.4. In the instant case, the court found the substantial

13

circumstances did not warrant a modification, and therefore it did not need to reach the issues of the amount and duration of new spousal maintenance.

Contrary to Austin's assertion, the court used the correct legal standard when it evaluated whether there was a substantial change in circumstance under RCW 26.09.170 without conducting an analysis under RCW 26.09.090.

Substantial Change in Circumstances

Under RCW 26.09.170, the burden of demonstrating the required change of circumstances to warrant modifying maintenance is on the party seeking modification. Lambert, 66 Wn.2d at 508.

A. *Grieben's Financial Ability*

The court did not abuse its discretion when it found Grieben's income did not constitute a substantial change of circumstance.

The court considered his average income from 2015, the year after the final decree was entered, to 2019. It stated, "His income has not increased to any degree that would be considered a substantial change in circumstances, and in fact it does not appear that it has increased really one way or the other." It recognized at the time the decree was entered, the parties knew what Grieben's financial circumstances were, they knew he had a substantial income, and that his income fluctuated.

Austin argues that Grieben's income "rocketed upward" relative to inflation. This is not supported by the record.

In the original December 2014 findings of fact and conclusions of law, one of the reasons the court ordered maintenance was because Grieben had the

ability to pay because "[h]e has a substantial income from Tri-Tec Communications, Inc." In the three years prior to the parties' dissolution, Grieben's average annual income was $598,244. From 2015 to 2019, Grieben's average annual income was about $540,332. Grieben's average income had actually decreased $57,912 after the 2014 decree was entered.

Austin also argues that Grieben has the ability to pay because he has the ability to liquidate his interest in TTC. We need not address the feasibility of that proposition because Austin's argument is based on substantial change of circumstances and not Grieben's ability to pay, and the parties in 2014 were aware of his interest in TTC when they agreed to the maintenance award in the decree.

The court did not abuse its discretion in finding there was no substantial change in circumstance as it relates to Grieben's financial ability to pay spousal support.

B. *Austin's Financial Need*

Austin contends that the court abused its discretion when it found that Austin's new and worsening medical conditions did not constitute a substantial change that would warrant modification. We disagree.

Austin argues that "the court ignored the uncontroverted evidence that Austin suffered from new health problems." However, the court prefaced its ruling with the following statement:

> First of all, I would like the parties to know that I have spent a significant amount of time reviewing all of the materials that were submitted for the purposes of the hearing in front of the Commissioner and any of the materials that were submitted for the

15

> Motion to Revise.  I also, of course, reviewed the initial Findings of Fact and Conclusions of Law and the Decree of Dissolution and have given a lot of thought to this case.

The court also observed that

> Austin had significant health conditions at the time the parties separated and divorced, and anyone who wouldn't contemplate that their medical conditions might get worse and not better, that doesn't seem realistic, especially since some of these things had been chronic or things that she had been dealing with for a significant period of time.

Austin further argues that her preexisting conditions worsened beyond what the parties had contemplated at the time of dissolution constituting a substantial change of circumstances.  Specifically, she argues that the vocational evaluation done in 2014 contemplated that she would be able to work, but her new medical conditions prevented her from doing so.

The trial court reasoned that in 2014 the parties had contemplated her health conditions worsening because Austin had not been working at the time of dissolution, she was awarded a significant amount of assets, and a significant amount of spousal maintenance.  She already had significant health conditions at the time, and it was likely that they anticipated her conditions could worsen.  It stated that it was not clear whether the parties anticipated her securing a full time job, but it was clear the parties clearly anticipated that she would be able to choose to work to supplement her income, and she could live off the assets provided from the dissolution.  Further, the court noted that although Austin sold some of her income-generating assets, that was not a substantial change—that is a choice she made.

Austin argues, without any supporting authority, that the trial court could

only determine what the parties contemplated if it was expressly stated in the dissolution court's findings of fact. We find this argument unpersuasive. See Morgan v. Morgan, 59 Wn. 2d 639, 643, 369 P.2d 516 (1962) (concluding there was neither evidence *in the record* nor a finding of fact to support an alimony award on such a conjectural basis) (emphasis added). The dissolution court's findings of fact included basing maintenance on "the age, physical and emotional condition and financial obligations of the party seeking maintenance" and

> the past, present and future earning or economic capacity of each party, including the earning or economic capacity of each spouse that was enhanced, diminished or foregone during the marriage . . .

The record included the 2014 vocational evaluation.

It is undisputed that Austin suffered from several chronic and long-term health issues that limited her ability to work. The 2014 vocational evaluation confirmed that Austin could not work in the entry level, unskilled positions she was qualified to do because of her health issues. The evaluation confirmed she required retraining to be competitive enough to be employable. However, the evaluation acknowledged that her health issues could interrupt any training. More importantly, the evaluation acknowledged that Austin's health issues may require her to take time off work "above and beyond the normal time off" and that it was important for her to be employed by an employer with more than 50 employees so they would be required by law to provide her Family Medical Leave. Otherwise, a smaller employer may not be able to afford the extra time off from work and Austin could risk losing her job in such a situation. It was reasonable for the trial court to conclude that the parties in 2014 contemplated

17

that Austin's health issues could worsen based on the number of chronic and long-term health issues that was known in 2014. And though the trial court found that it was not clear whether the parties anticipated her securing a full time job, the vocational evaluation provided a bleak outlook of Austin being able to secure or maintain any regular employment because of her health issues. While her health may have worsened since the decree, it did not substantially change the circumstance related to the anticipated challenges she would face trying to find employment. Austin presented this concern in 2014 and the parties came to agreement when maintenance was ordered.

Further, Austin contends that her expenses are now more than her income because she sold some of her income-producing assets in order to buy a condo before selling her house. As the trial court observed, this was a choice she made, and not a substantial change in circumstances. Even after selling some of her assets, one of the reasons she does not qualify for Supplemental Social Security Income is because of the amount of assets she possesses. Austin did not establish a substantial change of circumstances in her financial need that justified a maintenance modification. She instead argues that the court should award maintenance such that her income and Grieben's income are "equalized."

A trial court is not required to place former partners in an equal position for the rest of their lives. Matter of Marriage of Leaver, 20 Wn. App. 2d 228, 241, 499 P.3d 222 (2021). The objective of placing the parties on equal footing is permissible but not mandatory. Id. Austin had the opportunity to go to trial at the time of dissolution, but instead, after mediation, agreed with the proposed

18

maintenance and distribution of assets in the dissolution decree. Whether the final dissolution "equalized" the parties is of no matter in this appeal. The only question before us is if the trial court, based on this record, abused its discretion in concluding that Austin did not establish a substantial change of circumstances to warrant a modification of maintenance. The trial court did not abuse its discretion.

Attorney Fees on Appeal

Austin requests attorney fees under RCW 26.09.140 regardless of whether she is the prevailing party. RCW 26.09.140 provides that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Considering all the circumstances, we decline to award Austin attorney fees.[7]

We affirm.

_____
Coburn, J.

WE CONCUR:

_____     _____
    Mann, J.

---

[7] Austin, who submitted a financial declaration under RAP 18.1(c), filed a motion asking this court to compel Grieben to also file a financial declaration. RAP 18.1(c) provides "[i]n any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses," a party must timely file a financial declaration for his or her resources to be considered. Grieben did not request attorney fees. Because we do not award either party attorney fees, we deny Austin's motion to compel.